274 So.2d 490 (1973)
Thelton R. SALTER, Plaintiff and Appellant,
v.
NATCHITOCHES CHIROPRACTIC CLINIC et al., Defendants and Appellees.
No. 4106.
Court of Appeal of Louisiana, Third Circuit.
March 12, 1973.
*491 Watson, Murchison, Crews & Arthur, Natchitoches by William P. Crews, for plaintiff and appellant.
Christovich & Kearney by Edgar Cloutier, New Orleans, Ward-Steinman & Karst by Carl O. Brown, Jr., Alexandria, for defendants and appellees.
Before SAVOY, HOOD and CULPEPPER, JJ.
CULPEPPER, Judge.
Plaintiff seeks damages for personal injuries. He alleges that a chiropractor attempted to adjust or manipulate his cervical vertebrae. As a result, a thrombosis (clot) occurred in a vertebral artery. The clot moved upwards and obstructed certain arteries in the brain, causing severe personal injuries and permanent disabilities. Named as defendants are: (1) Dr. Fred D. Fussell, the chiropractor who performed the adjustment; (2) the Natchitoches Chiropractic Clinic, a partnership composed of Dr. Fussell and others; (3) Dr. Irving A. Shepherd, a partner in the clinic; (4) Palmer College of Chiropractic, a foreign corporation with its principal place of business in Davenport, Iowa; and (5) The John Doe Insurance Companies, who carry liability insurance on the other defendants.
Palmer College of Chiropractic filed an exception to the court's personal jurisdiction. The district judge sustained the exception. From a judgment dismissing Palmer College of Chiropractic, plaintiff appealed.
Plaintiff's allegations of negligence on the part of Palmer College of Chiropractic are as follows:
"1) In teaching methods and techniques of cervical and spinal manipulations and adjustments which are contrary to accepted medical standards.
"2) In teaching methods and procedures of healing or treating patients which fail to conform to the minimum standards required by the local, state, and national medical associations.
"3) In failing to properly instruct chiropractors as to the potential hazards and dangers of improper cervical or spinal manipulations or adjustments.
"4) In encouraging the practice of chiropractics within this Parish and State, contrary to the constituted statutes and laws of this state. In encouraging the conduct of practices which may be harmful, dangerous and injurious to public health and welfare."
At the trial of the exception, exhibits and depositions were introduced in evidence showing the extent of the contacts of Palmer College of Chiropractic with the State of Louisiana. These contacts are as follows: (1) Of the approximately 1,300 students presently enrolled in Palmer, two or three are from Louisiana. (2) Louisiana residents correspond with Palmer seeking information concerning enrollment. (3) Palmer encourages residents of Louisiana to enroll. (4) For many years, residents of Louisiana have attended Palmer. (5) In 1965, Palmer assigned a goal enrollment *492 of 22 students from Louisiana, and had 10 enrolled at that time. (6) Palmer maintains contact with its graduate practitioners in Louisiana through an alumni organization and the publication of a bimonthly newspaper. (7) Palmer maintains a department for the sale of pamphlets and brochures to private citizens as well as chiropractors in Louisiana, encouraging the use of its theories of healing. (8) Palmer maintains a continuing educational program for its alumni in conjunction with its annual homecoming, which is attended by residents of Louisiana. (9) The laws of Louisiana do not permit the licensing of chiropractors to practice in this state, but the dean of Palmer College conducted considerable correspondence with Dr. Joseph Sabatier, a member of the Louisiana State Medical Society and chairman of the American Medical Association's Committee on Quackery, for the purpose of encouraging the licensing of chiropractors in Louisiana. (10) The dean of Palmer College and other members of its faculty have attended meetings in Louisiana and appeared before committees of our legislature to testify for the licensing of chiropractors in Louisiana. (11) Pursuant to an invitation by Palmer College, Dr. Sabatier and others from Louisiana attended a meeting at Palmer College in Davenport, Iowa, where they were presented information as to the nature of chiropractic for the ultimate purpose of securing licensing in Louisiana. (12) Palmer College of Chiropractic is a non-profit corporation organized under the laws of the State of Iowa, with its principal place of business in Davenport, Iowa. Its principal business is teaching chiropractic. It is not authorized to do business in Louisiana and has no agents, offices or other place of business in this state.
Plaintiff contends the courts of Louisiana have personal jurisdiction over Palmer College of Chiropractic under our longarm statute, LSA-R.S. 13:3201, which provides in pertinent part:
"A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from the nonresident's
(a) transacting any business in this state;
* * * * * *
(b) contracting to supply services or things in this state;
(d) causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state;"
Comment (a) of the Louisiana State Law Institute under the above quoted statute states its purpose is "to permit the courts of this state to tape the full potential of jurisdiction in personam over nonresidents permitted by International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057 (1945); and McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)."
Despite the liberal purpose of the statute, the defendant points out that there are restrictions on the exercise of personal jurisdiction by state courts. Defendant quotes as follows from the International Shoe Company case:
"Due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice'."
Defendant also quotes from Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L. Ed.2d 1283, the following language:
"... but it is essential in each case that there be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the foreign state, thus invoking the benefits and protection of its laws."
Counsel have found no cases similar to the present one against a nonresident college. We will discuss briefly some of the *493 cases which are cited. In the first group of cases, Louisiana courts took personal jurisdiction in products liability cases where nonresidents sold defective products in this state, Home Gas & Fuel Company, Inc. v. Mississippi Tank Company, Inc., 143 So.2d 641 (La.App., 3rd Cir. 1962); Aucoin v. Hanson, 207 So.2d 834 (La.App., 3rd Cir. 1968); and Fisher v. Albany Machine & Supply Company, 261 La. 747, 260 So.2d 691 (1972). The rationale of these products liability cases is discussed in Riverland Hardwood Company v. Craftsman Hardwood Lumber Company, 259 La. 635, 251 So.2d 45 (1971) where a Louisiana resident sold lumber to a nonresident and then sued in Louisiana to recover the price. The court stated there is a difference between foreign purchasers and foreign sellers with respect to personal jurisdiction. Sellers accept the risk of interstate business, whereas nonresident purchasers do not contemplate suits arising against them in a foreign jurisdiction thousands of miles away.
Two cases are cited by defendant for the proposition that the mere mailing of pamphlets, periodicals, etc., to a state does not constitute "transacting any business in this state", Bowlero, Inc. v. Allen, La.App., 205 So.2d 196; Buckley v. New York Times Company, 5 Cir., 338 F.2d 470, and the cases cited therein.
We note particularly cases which emphasize "traditional notions of fair play and substantial justice" (a quotation from the International Shoe Company case), and the respective conveniences and inconveniences to the parties. In Babineaux v. Southeastern Drilling Corporation, 170 So.2d 518 (La.App., 3rd Cir. 1965) writ refused, 247 La. 613, 172 So.2d 700, a Louisiana resident received a disabling injury while working on an offshore drilling rig in the Persian Gulf. On returning to his home in Louisiana, he sued his nonresident employers. As grounds for taking personal jurisdiction, the court considered the fact that defendants had come to Louisiana and advertised for workers, had interviewed plaintiff and other prospective employees in Louisiana and had constructed the drilling rig in Louisiana, etc. But important factors in the court's decision were the notions of fairness and justice and the convenience of the parties. The court said:
"The plaintiff is domiciled in Louisiana. He was recruited while a resident here. He is now disabled in this state. He needs medical attention here in his Louisiana domicile. A distant forum, in Kuwait or in Panama or even in Texas, places him at an obvious disadvantage. It is one which Louisiana no longer is required by the federal constitution to force him to endure, since his cause of action for his disability arises as a consequence of his employers' substantial business activity in Louisiana to employ him for the work in which he was injured."
Drilling Engineering, Inc. v. Independent Indonesian American Petroleum Company, 271 So.2d 285 (3rd Cir. 1973) is somewhat similar to the Babineaux case, except that in Drilling Engineering the plaintiff was a Louisiana corporation which furnished engineering services to a nonresident company for offshore drilling activities in Indonesia. Plaintiff sued in Louisiana for the balance due under the contract to furnish these services. We distinguished Drilling Engineering, Inc. from Babineaux on the grounds that in Drilling Engineering, Inc. there were fewer contacts by the defendant with Louisiana and, additionally, on the grounds that the factors of fairness, justice and inconvenience to the parties which favored the injured workmen in Babineaux, did not favor the plaintiff in Drilling Engineering, Inc. which was in the business of selling its services outside Louisiana.
Plaintiff makes a persuasive argument that although one or two of the activities of Palmer College in Louisiana may be insufficient for personal jurisdiction, when all are combined and considered together they show the defendant has engaged in a "persistent course of conduct" in this state in connection with its business which is *494 that of operating a college of chiropractic. Nevertheless, we conclude that it would offend traditional notions of justice and fair play and the respective conveniences and inconveniences of the parties, if a college or other institution of education could be sued in any state where its students have caused injury while using, or attempting to use, the knowledge, methods and procedures taught by the college. To hold otherwise would mean that in all kinds of actions based on malpractice in various fields, such as medicine, law, engineering, architecture, dentistry, etc., the colleges attended by the respective alumni could be sued in the state where the injury occurred. We do not think such a result was contemplated by the federal cases cited above. It could result in a serious inconvenience and expense to our institutions of higher education if they had to defend these suits in states thousands of miles from their domiciles.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff appellant.
Affirmed.