MEMORANDUM OF DECISION RE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
This action, commenced via a two-count complaint dated August 10, 1990, claims damages in connection with injuries suffered by the plaintiff, John Doe, M.D., when the plaintiff became infected with HIV, the virus causing AIDS, as the result of his having been stuck by a hypodermic needle at Yale-New Haven Hospital on August 18, 1988 while in the sixth week of Yale University's medical residency program. The plaintiff thereafter applied for and received workers' compensation benefits from the intervening plaintiff, Yale-New Haven Hospital. In this action, the plaintiff alleges that his injuries were as the result of negligence on the part of the defendant University in failing to properly train and supervise him in the particular procedure that he was performing at the time of the incident.
Specifically, Dr. Doe alleges that he began his residency program in July of 1988. On August 15, 1988, he was assigned to the intensive care unit at Yale-New Haven Hospital where he came under the supervision of Dr. Allison Heald, the senior resident in charge of the ICU. Dr. Heald was responsible for supervising Dr. Doe and three other interns. On August 18, 1988, Dr. Heald is CT Page 13740 alleged to have ordered Dr. Doe to change the arterial line in a terminally ill AIDS patient without any supervision from Dr. Heald and without having received proper training in the procedure.
Pursuant to Practice Book § 379, defendant Yale University (the "University") has now moved for summary judgment, based on its contention that plaintiff's complaint, which it says amounts to a claim of educational malpractice, is not cognizable under Connecticut law. Summary judgment may be granted when the pleadings, affidavits and other proof submitted demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Practice Book § 384; Connelly v. Housing Authority of the City of NewHaven, 213 Conn. 354, 364 (1990); Wilson v. City of New Haven,213 Conn. 277, 279 (1989); Burns v. Hartford Hosp.,192 Conn. 451, 455 (1984) Bartha v. Waterbury House Wrecking Co.,190 Conn. 8, 11 (1983). "The test is whether the party would be entitled to a directed verdict on the same facts." Connelly,213 Conn. at 364;State v. Goggin, 208 Conn. 606, 616 (1988). "The motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried."Wilson, 213 Conn. at 279.
In Gupta v. New Britain General Hospital, 239 Conn. 574
(1996), the Connecticut Supreme Court joined those states that have rejected educational malpractice claims brought by students and others challenging the adequacy or quality of the education provided to their intended recipients. See, Ross v. CreightonUniversity, 957 F.2d 410 (1992); Houston v. Mile High AdventistAcademy, 846 F. Sup. 1449 (1994); Clarke v. Trustees of ColumbiaUniversity, 1996 U.S. Dist. LEXIS 15620 (S.D.N.Y. 1996); Moore v.Vanderloo, 386 N.W.2d 108 (Iowa 1986); Donohue v. Copiague UnionFree School District, 391 N.E.2d 1352 (N.Y. 1979); Hoffman v.Board of Education of the City of New York, 49 N.Y.2d 121,400 N.E.2d 317. 424 N.Y.S.2d 376 (1979) and Doe v. Board of Educationof Montgomery County, 295 Md. 67, 453 A.2d 814 (1982). Turner v.Rush Medical College, 537 N.E.2d 890 (Ill.App. ), appeal denied,Turner v. Rush Medical College, 545 N.E.2d 133 (Ill. 1989); Peterv. San Francisco Unified School District, 60 Cal.App.3d 814
(1976); Cavaliere v. Duff's Business Institute, 605 A.2d 397 ( Pa. Super. 1992); Swidryk v. St. Michael's Medical Center,493 A.2d 641 (N.J.Super. 1985).
These cases, however, uniformly involve fairly broad CT Page 13741 challenges to the overall quality of a particular educational program. They have tended to focus generally, although not exclusively, on primary and secondary education received in public schools and to involve claims either of 1) failure of a particular educational program to equip the would-be recipient with the skills and knowledge reasonably to be expected of such a program, or 2) improper diagnosis of learning disabilities.
The few cases that have considered a plaintiff's attempt to state a claim for educational malpractice in the context of medical school training have involved injury to a third person. Two of these were claims brought by an injured third person against Palmer College of Chiropractic, alleging injuries as a result of chiropractic methods and techniques taught at the school to the chiropractors who treated them. Salter v.Natchitoches Chiropractic Clinic, 274 So.2d 490 (La.App. 1973) and Moore v. Vanderloo, 386 N.W.2d 108 (Iowa 1986). These claims were appropriately rejected.
The other case involved a plaintiff physician who brought a declaratory judgment action against his medical school claiming educational malpractice related to an incident that occurred during his residency and which resulted in his being sued for medical malpractice. Swidryk v. St. Michael's Medical Center,201 N.J. Super. 601, 493 A.2d 641 (1985). He claimed that the school failed to supervise the intern and residency programs properly and provide a suitable environment for his medical educational experience. As a result, he contended, he was rendered vulnerable to the medical malpractice complaint made against him in the underlying action.
The court ruled against the plaintiff, relying in part on, and deferring to, New Jersey's strict statutes and regulations governing medical educational programs. The court was also concerned as a matter of public policy that it would be unwise to recognize a claim for educational malpractice where an individual physician is attempting to defend against a medical malpractice claim. Such a practice would invite an educational malpractice trial within every medical malpractice case.
Against the backdrop of all of these cases, it is apparent that the plaintiff's claim in this case is not a claim for educational malpractice. Dr. Doe does not claim a failure in the defendant's overall educational program or that education did not equip him to be a good doctor. Instead, his is a very precise CT Page 13742 claim based on Yale's alleged failure to train him adequately in needle safety and in the performance of the arterial line insertion which is the subject of this case, as well as the failure to supervise him as he undertook to perform that task, with the result that he sustained a life threatening personal injury.
In short, this is a claim of negligence in which the plaintiff must prove duty, breach of duty, proximate cause and damages. The test for the existence of a legal duty of care entails a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would "anticipate that harm of the general nature of that suffered was likely to result." Zamstein v. Marvasti,240 Conn. 549 (1997). The question of whether it was foreseeable to a reasonable person in the defendant's position that Dr. Doe would be injured if he were ordered to insert the arterial line in this patient without adequate training or supervision does not implicate the concept of educational malpractice.
This case, rather than being akin to Gupta, is far more likeKirchner v. Yale University, 150 Conn. 623 (1963), decided 33 years before Gupta and neither specifically overruled nor even mentioned in the latter decision. The plaintiff in Kirchner was an architectural student injured while operating a jointer in the woodworking shop provided by the university For the use of its architectural students. The court held that it was the duty of the Yale University and the employee who was in charge of the shop to exercise reasonable care to instruct and warn students in the safe operation of the machines furnished for their use and to have available such appliances as might be necessary to facilitate their safe operation. Kirchner, 627. Here, the claim is that it was the University's obligation to provide adequate training, instruction and supervision to Dr. Doe in the safe performance of the insertion of the arterial line in order to avoid the foreseeable risks of the procedure.
By contrast, the plaintiff physician in Gupta had challenged General Hospital's decision to dismiss him from its surgical residency training program because of his poor clinical performance. He claimed that his dismissal violated his residency agreement with the Hospital and that the Hospital failed to provide him a residency program that would reasonably and adequately train him in accordance with the standards established for teaching hospitals. The trial court had granted the CT Page 13743 Hospital's motion for summary judgment, concluding that the decision to dismiss the plaintiff from the residency training program was an academic decision that lay solely within the province of the Hospital, and the Supreme Court affirmed.
The Court recognized that the plaintiff was essentially asking the Court "to evaluate the course of instruction [and] . . . to review the soundness of the method of teaching that has been adopted" by an educational institution — a task that the judiciary is ill-equipped to undertake. Id. at 590 (quoting Ross v. Creighton University, 957 F.2d at 416.). As the Court observed,
 . . . a claim such as that advanced by the plaintiff raises questions concerning the reasonableness of conduct by educational institutions in providing particular educational services to students — questions that must be answered by reference to principles of duty, standards of care, and reasonable conduct associated with the law of torts. Because these tort principles are difficult, if not impossible, to apply in the academic environment, courts have almost universally held that claims of educational malpractice are not cognizable. Among other problems of adjudication, these claims involve the judiciary in the awkward tasks of defining what constitutes a reasonable educational program and of deciding whether that standard has been breached. In entertaining such claims, moreover, courts are required not merely to make judgments as to the validity of broad educational policies but, more importantly, to sit in review of the day-to-day implementation of these policies.
Id. at 590-91 (internal citations and quotations omitted). The Court concluded that judicial noninterference was particularly appropriate where specialized bodies are charged with the responsibility for overseeing and regulating medical residency programs.
The plaintiff here, however, is not asking this court to interfere with the purely academic decisions of the defendant, to CT Page 13744 make judgments about the quality of broad educational policies, or to evaluate the overall quality of his education generally and the residency program in particular. Rather, he is asking the court to consider the allegedly negligent failure of the university to provide appropriate instruction and supervision in the performance of a particular risky procedure. The public policy considerations that have caused courts and commentators to conclude that educational malpractice claims are not cognizable are absent in this case.
Although the subject matter of this complaint occurred in the context of a medical residency training program, the complaint sounds in simple negligence, rather than malpractice. The defendant is not entitled to judgment as a matter of law, and its motion for summary judgment is therefore denied.
Jonathan E. Silbert, Judge