776 So.2d 528 (2000)
David Jed WOODARD, M.D.
v.
UNIVERSITY OF UTAH, et al.
No. 00-789.
Court of Appeal of Louisiana, Third Circuit.
November 2, 2000.
Writ Denied January 26, 2001.
*529 Daniel Brenner, Alexandria, LA, Counsel for Plaintiff/Appellant.
David Sobel, Alexandria, LA, Counsel for Defendant/Appellee.
(Court composed of BILLIE COLOMBARO WOODARD, MARC T. AMY, and MICHAEL G. SULLIVAN, Judges.)
SULLIVAN, Judge.
Dr. David Jed Woodard sued the University of Utah and Dr. Ita Killeen for breach of contract, defamation, and intentional infliction of emotional distress arising out of information disseminated about his medical residency at the university. He appeals the dismissal of his claims on an exception of personal jurisdiction. For the following reasons, we affirm.

Facts
Dr. Woodard worked as a family practice resident at the University of Utah from July 1994 through December 1994. He initially intended to complete a one-year residency program, but he left after six months because of family problems. In 1997, Dr. Killeen, the university's residency director, drafted a "Final Letter of Residency" in response to requests for information about Dr. Woodard's participation in the residency program. The letter was not complimentary. In it, Dr. Killeen stated that Dr. Woodard showed poor clinical judgment, had difficulty working with staff, exhibited a level of confidence that was out of proportion to his clinical skills, generated complaints from patients and staff, and was placed on probation for "negative behaviors noted by multiple evaluators." Dr. Killeen reported that Dr. Woodard had satisfactorily completed a one-month pediatrics rotation in his six months at the university, but she could not give him a "positive final recommendation" based on his performance in the program.
Believing this letter to be inaccurate, Dr. Woodard hired an attorney in Alexandria, Louisiana, Gregory S. Erwin, who began negotiations with the university's general counsel, Kristin E. Clayton. On April 15, 1998, Ms. Clayton wrote to Mr. Erwin that Dr. Killeen agreed to limit any future responses to only the dates of attendance and credits completed by Dr. Woodard at the university. This proposed "facts only" letter read as follows:
To whom it may concern:
David Jed Woodard, M.D., was a resident at the University of Utah Family Practice Program between July 1, 1994 and December 31, 1994. During that *530 time period he received one month of credit in Inpatient Pediatrics.
Sincerely,
Ita Killeen, M.D. Residency Director
On April 22, 1998, Mr. Erwin wrote to Ms. Clayton that Dr. Woodard found the "facts only" letter acceptable, with the understanding that Dr. Killeen would respond to both written and oral inquiries in the same manner.
On July 28, 1999, Dr. Woodard, represented by his present counsel, filed suit against the university and Dr. Killeen, alleging that (1) subsequent to the April 1998 agreement, Defendants responded to one or more inquiries with the "Final Letter of Residency" rather than the "facts only" letter; (2) the "Final Letter of Residency" was defamatory per se both in its original publications and in those after the agreement; (3) Defendants intentionally and/or negligently disseminated the "Final Letter of Residency"; and (4) Defendants knew or should have known that the dissemination of that letter would inflict severe emotional distress on Plaintiff.
Defendants responded to the suit with exceptions of vagueness and lack of personal jurisdiction. Additionally Dr. Killeen filed an affidavit stating that, to the best of her knowledge, (1) the "Final Letter of Residency" was never sent to any entity in Louisiana, but only to the State of Missouri on one occasion on April 23, 1997; (2) between 1995 and 1997, she responded to various residency requests concerning Dr. Woodard with letters containing much less information than the "Final Letter of Residency," which responses she attached to the affidavit; and (3) after April 1998, she sent the "facts only" letter to a few Louisiana entities. She further stated that her only contacts with the State of Louisiana were attending one professional conference over five years ago and visiting the state for a wedding three years ago. She also said that she did not participate in negotiations with Dr. Woodard's counsel in this matter.
In her affidavit, Dr. Killeen identified the university's only contacts with this state as normal student recruitment, alumni relations, and sending university employees to conferences here. Concerning this litigation, she stated that the university's only contacts with Louisiana included exchanging telephone calls and letters about the "facts only" letter.
At the hearing, Dr. Woodard's counsel acknowledged that the "Final Letter of Residency" was never sent to Louisiana, either before or after the agreement of April 1998. However, counsel for Dr. Woodard insisted that the university or Dr. Killeen responded to at least one request for information with that letter after agreeing that the "facts only" letter would be used in all future inquiries. After taking the matter under advisement, the trial court granted Defendants' exception to personal jurisdiction and declared the exception of vagueness moot.

Opinion
La.R.S. 13:3201(B) provides in part that "a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States." After the addition of this paragraph in 1987, the only inquiry into jurisdiction over the person of a nonresident is whether constitutional due process requirements have been met. Superior Supply Co. v. Associated Pipe & Supply Co., 515 So.2d 790 (La.1987).
Before a state may exercise personal jurisdiction over a nonresident defendant, due process requires that defendant have certain "minimum contacts" with the forum state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945). In Aetna Casualty & Surety Co. v. Continental Western Insurance Co., 97-206, pp. 5-6 (La.App. 3 Cir. 12/10/97); *531 704 So.2d 900, 902-03, writ denied, 98-77 (La.3/13/98); 712 So.2d 884, this court summarized the federal and state jurisprudence concerning the establishment of "minimum contacts" as follows:
The nonresident must have purposefully availed itself of the privilege of conducting activities within the forum state such that it can be said it should have reasonably anticipated being haled into court there. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239-1240, 2 L.Ed.2d 1283 (1958), the court stated, and in Burger King Corp. [v. Rudzewicz], 471 U.S. 462, 474-475, 105 S.Ct. 2174, 2183 [1985], the court reemphasized the following:
The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. [Emphasis added].
The "purposeful availment" requirement ensures that the defendant will not be haled into a jurisdiction solely as a result of a random, fortuitous, or attenuated contact, or by the unilateral activity of another party or a third person. de Reyes v. Marine Mgt. and Consulting, 586 So.2d 103 (La.1991).
There has developed a two-part test in personal jurisdiction analysis. First, it must be shown that the defendant has established minimum contacts with the forum state-i.e., it has purposefully directed its activities at the residents of the forum state. Once that is shown, "a presumption arises that jurisdiction is reasonable and the burden of proof and persuasion shifts to the defendant opposing jurisdiction to present `a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" de Reyes, 586 So.2d at 106.
Dr. Woodard argues that Defendants are subject to the personal jurisdiction of this state because the exchanging of letters and telephone calls between attorneys resulted in a contract perfected in this state, i.e., the agreement that Dr. Killeen would reply to all information requests about Dr. Woodard with the "facts only" letter. In Aetna Casualty & Surety Co., 704 So.2d at 902, we discussed the "minimum contacts" required for personal jurisdiction in a contract dispute:
A nonresident has the necessary contacts with the forum state where it has a contract with a substantial connection to the forum state. McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). In the specific area of interstate contracts, where a party has reached out beyond its domiciliary state and has created continuing obligations and relationships with citizens of another state, that party is subject to the regulations and sanctions in the other state for the consequences of its actions. Burger King Corp., 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528.
However, as the following illustrates, not every contract will support the exercise of personal jurisdiction:
[A] "contract" is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." It is these factors-prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing-that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.

*532 (Citations omitted.)
Id. at 903 (quoting Burger King Corp., 471 U.S. at 479, 105 S.Ct. at 2185) (emphasis added).
In Calahan v. Haspel, 99-44 (La.App. 3 Cir. 5/5/99); 732 So.2d 796, we refused to exercise personal jurisdiction over nonresident defendants who breached a contract of lease with Louisiana residents. We found the lease was not a "contract with a substantial connection" to this state, even though the defendants mailed their lease payments to the plaintiffs in Louisiana. Id. at 799. Because the object of the lease, a residence, was not located in this state, we found it "merely fortuitous that the owners of the property were residents of Louisiana and that payments would be made to Plaintiffs in Louisiana." Id. However, in Superior Supply Co., 515 So.2d 790, the supreme court found that a Colorado defendant who sold defective steel casing to a Texas corporation with its principal place of business in Louisiana could be sued in redhibition here, even though parties never intended that the casing would be delivered to this state. The supreme court found that the defendant purposefully directed business activities to Louisiana by sending employees to solicit sales here and that the contract at issue was clearly related to those activities.
In the present case, Plaintiff has not alleged that Defendants sent defamatory letters to any entity in Louisiana. Defendants' only contacts with Louisiana, aside from the negotiations that led to the alleged "contract," were normal recruitment and alumni activities. Louisiana has declined to exercise personal jurisdiction over out-of-state colleges based on these activities, when the suit does not arise from that conduct. See Fox v. Board of Supervisors, 576 So.2d 978 (La.1991); Salter v. Natchitoches Chiropractic Clinic, 274 So.2d 490 (La.App. 3 Cir.1973). We cannot conclude that Defendants purposely availed themselves of conducting activities in this state through negotiations between counsel in this isolated incident. As in Calahan, it is merely fortuitous that the Plaintiff, Dr. Woodard, has relocated to Louisiana. Further, the "contract" that he alleges Defendants breached did not contemplate any activities in this state. Because we find Defendants have not established minimum contacts with Louisiana, we find Defendants were not required to argue other considerations that would have made the exercise of jurisdiction unreasonable.

Decree
For the above reasons, the judgment of the trial court is affirmed at Plaintiff's cost.
AFFIRMED.