518 So.2d 1175 (1988)
Norman J. FRANCIONI, et al.
v.
Sterling R. RAULT, Sr., et al.
No. CA-7787.
Court of Appeal of Louisiana, Fourth Circuit.
January 14, 1988.
Rehearing Denied February 11, 1988.
Writ Denied April 11, 1988.
David R. Paddison, Covington, for plaintiff.
Alfred F. Huete, in pro. per.
E. Ross Buckley, Jr., Blue, Williams and Buckley, Metairie, for defendant, Masonite Corp.
Before GULOTTA, C.J., and WARD and WILLIAMS, JJ.
GULOTTA, Chief Judge.
This is a wrongful death action resulting from the murder of the decedent by her co-worker. Plaintiffs appeal from a summary judgment dismissing their claims against a former employer who allegedly *1176 failed to disclose the killer's known criminal tendencies to decedent's employer and prevent the risk of harm. Because the undisputed material facts establish that the prior employer did not breach any legal duty to protect the decedent, we affirm the summary judgment of dismissal.
Sterling R. Rault resigned from the Masonite Corporation in Laurel, Mississippi in early May, 1981, after he had been discovered embezzling company funds. Although the matter was reported to Laurel police, Rault made restitution of over $118,000.00 to Masonite, and no charges were brought against him.
In August, 1981, Rault was hired as an assistant comptroller by Louisiana Energy and Development Corporation (LEDCO) in New Orleans. Rault had been referred to LEDCO by an employment agency, Accounting/EDP Personnel Services, Inc. (EDP), with whom Rault had registered in early 1981 before he resigned from Masonite. The employment agency had called Masonite to verify Rault's dates of employment, but was not informed of his embezzlement.[1] In reliance on the employment agency's recommendations, LEDCO hired Rault.
In the fall of 1981, while he was working for LEDCO, Rault returned briefly to Laurel and spoke to his former co-worker at Masonite, Ted Bolerware, who had replaced him. Although Rault made no overt threats and appeared to act cordially, Bolerware suspected that Rault had cut the brake lines on his car. Bolerware reported his suspicions to the general manager of Masonite, who hired a private detective and alerted local police. Rault was also suspected of a break-in at the Masonite company during this time, but a surveillance of him during his stay in Laurel produced no proof, and no charges were brought against him. After these incidents, Rault returned to Laurel occasionally on weekends, talked on a friendly basis with Bolerware, and made no threats.
Rault worked for LEDCO for seven months, from August, 1981 until March 1, 1982, when he was arrested for the murder of his LEDCO co-worker, Jane Ellen Francioni. It was subsequently discovered that Rault had embezzled nearly $85,000.00 from LEDCO.
The parents of Jane Francioni filed a suit for wrongful death for the loss of their daughter, naming among the defendants LEDCO, EDP, and Masonite Corporation. Plaintiffs alleged that Masonite had been negligent in failing to alert future employers and authorities in other jurisdictions about Rault's dangerous character and propensities, when Masonite knew of his earlier embezzlment and his later attempt to kill Masonite's employee, Bolerware.
All three defendants filed motions for summary judgment. Although he denied LEDCO and EDP's motions, the trial judge granted summary judgment dismissing Masonite.[2] In written reasons, the trial judge concluded Rault had exhibited no evidence of belligerency or danger to anyone after making restitution to Masonite. The trial judge further stated that Masonite had no duty to disclose Rault's prior criminal conduct in response to a routine request to verify his prior employment history. Even assuming that a duty had existed to divulge Rault's prior embezzlement, the trial judge found that the risk that Rault would commit a violent act against a victim did not fall within the scope of that duty. The judge concluded that even though it was conceivable that a white collar criminal might commit a similar crime in the future, Masonite could not have known of Rault's homicidal behavior.
Appealing, plaintiffs contend that Masonite owed a duty to divulge Rault's prior *1177 criminal conduct when the employment agency requested verification of his employment history. According to plaintiffs, Masonite had a duty to disclose truthfully and completely the circumstances surrounding Rault's prior employment, and that if Masonite had reported his previous embezzlement activities and his acts of violence against Bolerware, LEDCO would not have hired Rault and he would not have posed a danger to his co-worker Francioni. Plaintiffs argue that Masonite misrepresented Rault's history and knowingly placed third persons at risk. We disagree.
In applying the doctrine of duty risk, we consider whether Masonite's conduct was a cause in fact of the harm, whether Masonite had a duty to protect against the risk involved, whether Masonite breached that duty, and whether plaintiffs suffered damages as a result. Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La.1984); Thomas v. Missouri Pacific R. Co., 466 So.2d 1280 (La.1985). Generally, unless a person assumes the responsibility, he has no duty to protect others from the criminal activity of third parties. Harris v. Pizza Hut of Louisiana, Inc., supra.
Under the facts in the instant case, we conclude that Masonite breached no duty owed to this decedent. As the trial judge noted, Rault had manifested no violent behavior or homicidal tendencies at the time of his resignation from Masonite in May, 1981. Even assuming that Masonite's failure to disclose his embezzlement to the employment agency may have increased the risk that Rault would be hired elsewhere and possibly perpetrate another embezzlement, Masonite's duty to furnish his employment history to interested parties did not encompass the risk that he would murder his co-worker at a subsequent job. There is no "ease of association" between Masonite's duty and the death of the decedent in this case. See Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972).
Furthermore, though it is true that Masonite placed Rault under surveillance for the suspected cutting of his former co-worker's brake lines and the break-in of the Masonite company in the Fall of 1981, these incidents occurred after Rault had resigned from Masonite and had begun working at his new job at LEDCO. Masonite acted prudently by reporting its suspicions to the Laurel, Mississippi police, but owed no further duty to alert LEDCO, the employment agency, or the public at large.
Accordingly, we conclude that Masonite did not assume any duty to protect Jane Francioni from the unforeseeable violent acts Sterling Rault perpetrated months after he left his employment in Mississippi. Based on the undisputed material facts, the trial judge properly granted summary judgment dismissing plaintiffs' claims against Masonite.
The judgment is affirmed.
AFFIRMED.
NOTES
[1] Although Masonite initially denied receiving any request for job references on Sterling Rault, Masonite later filed a "Statement of Undisputed Material Facts" with its second motion for summary judgment. In this pleading, Masonite stated that if Alfred F. Huete of EDP had called Masonite's personnel department, the call was made between January 1, 1981 and May 29, 1981, to verify only Rault's dates of employment.
[2] Masonite's first motion for summary judgment was denied on October 22, 1985, but after subsequent discovery its second motion was granted on February 2, 1987.