J¿PER CURIAM.
This matter is before us on an application for supervisory writs wherein the State of Louisiana, through the Department of Public Safety and Corrections, seeks review of the trial court’s judgment denying its motion for summary judgment (MSJ) and its motion in limine. Relator argues that the court erred in not granting the MSJ because relator had no duty to disclose a fully pardoned prior criminal *512 conviction of a former employee to the hiring employer and because relator did not have a duty to protect the victim against the alleged intentional acts of its employee. Finding error in the denial of the MSJ, we grant the writ in part.
FACTS
K.S., individually and on behalf of her minor child, J.S.,[2] filed suit against relator, State of Louisiana, through the Department of Public Safety and Corrections; Wayne Summers; and Florida Parishes Juvenile Justice District (hereinafter “District”).[3] In her petition, plaintiff alleged that her son was by order of juvenile court incarcerated in the Florida Parishes Juvenile Detention Center (hereinafter “Center”). Plaintiff alleged that Summers was employed by relator and/or the District as warden, that he was responsible for the operation of the Center, and that he was entrusted with the care of the juvenile. (The Center is actually operated by the Florida Parishes Juvenile Justice Commission, which was set up to manage the affairs of the District; the Commission is [.^¡composed of a Board of seven commissioners.) Plaintiff alleged that Summers sexually assaulted and abused her son on April 25,1997.[4]
According to the petition, Summers, while principal of an Abbeville elementary school in Vermilion Parish, was arrested and pled guilty to possession with intent to distribute marijuana, a felony. Plaintiff alleged that Summers was fired in 1983 on grounds pf dishonesty and willful neglect based on these charges. Plaintiff further alleged that Summers was imprisoned for six months and served two years probation. Shortly after serving time, Summers was hired by relator as a teacher at the juvenile training institute in Bridge City and thereafter performed work for the juvenile parole board. In 1992, Summers was appointed superintendent of the Center.
Plaintiff alleged that relator was guilty of the following intentional acts and/or negligence: failing to conduct a background check of Summers prior to his being employed in various capacities involving work with juveniles; being negligent per se as a result of employing a convicted felon; violating La. R.S. 15:825.3; failing to properly supervise Summers; failing to adopt and enforce proper procedures for the care and protection of children in its custody; permitting Summers to remove J.S. from the juvenile center premises; and vicarious liability for the tortuous and/or intentional acts of its employee. According to the petition, relator and the Center knew or should have known that employing Summers, who had already established himself as a person not suitable to work with juveniles, violated law established to protect the rights of juveniles; knew or should have known that an employee with Summers’ background could cause harm to juveniles; and knew or | ¿should have known that Summers’ conduct was and had been in the past, inappropriate toward juveniles entrusted to his care. Plaintiff alleged that relator and the Center might have prevented the acts of their employee toward J.S., but failed to do so. Plaintiff alleged that relator violat *513 ed plaintiffs civil rights under 42 USC 1983.
Relator filed an MSJ, contending that in (March) 1987, Summers was pardoned by former Governor Edwards for the marijuana conviction and in (July) 1991, the conviction was set aside to have the same effect as an acquittal, except for purposes of sentencing in similar subsequent prosecutions. See LSA-C.Cr.P. art. 893(D)2.[5] In 1992, Summers was hired by the Commission for the District. When Summers was hired by the Commission, Louisiana’s Child Protection Act prohibited the hiring of a person with a felony conviction, such as drug distribution, for a position in a juvenile detention facility. See LSA-R.S. 15:825.3. Before the Commission decided to hire Summers, four employees of the Department of Public Safety and Corrections wrote letters of recommendation to the Commission on official letterhead. Only one of the four authors of the letters had knowledge of Summers’ drug conviction, but did not mention it in his letter.
A criminal background check was done on Summers — a state check, a state police check and a national check with the FBI; | fithe Commission officials also requested a National Crime Information Center criminal background report. The report said there were no matching records, but the report contained the caveat that it did not preclude the possible existence of matching records in local, state, or FBI identification division files that were not indexed in the NCIC III. During his preemployment interview, Summers was never asked by the Commission about his criminal background or if there was anything questionable in his background. No person during the application and interview process asked a more searching question inquiring into any incidents in his background that would reflect adversely upon the District if he were hired or would reflect adversely upon his fitness for the position. During his employment with the District, Summers spoke openly about his marijuana conviction with the president of the Commission, several employees of the District, and even among the juvenile inmate population.
Relator also alleged that at all times relevant to the litigation, J.S. was in the physical custody and control of the District, not relator. Relator further alleged that Summers was an employee of the District, not relator.
Plaintiff submitted in opposition a contract between relator and the Center concerning the housing of children in relator’s custody; the contract says that relator can come into the Center anytime unannounced and inspect it. According to the contract, if the Center has any knowledge or any suspicion of any abuse towards state children that are housed there, the Center has the responsibility to report the abuse and notify relator. Plaintiff also submitted documents showing J.S.’s crime and that he was initially in relator’s custody. Additionally, plaintiff submitted computer printouts that were allegedly in relator’s employee personnel file for Summers; the ^printouts reference the docket number of the Vermilion Parish criminal pro *514 ceedings and conviction for intent to distribute marijuana.
Relator also filed a motion in limine seeking to exclude any evidence regarding Summers’ marijuana conviction.
The trial court denied both the MSJ and the motion in limine. From these rulings, relator seeks writs.
DISCUSSION
Relator argues that the court erred in not granting the MSJ as to any of four bases of liability. Relator contends that it could not be held liable under 42 USC § 1983; that it had no duty to disclose a prior criminal conviction of Summers to the Commission; that even if it had such a duty, that a prior conviction that was subsequently absolved by a full gubernatorial pardon and dismissed under LSA-C.Cr.P. art. 893(D)(2) does not have to be disclosed; and that relator did not have a duty to protect J.S. against the alleged intentional acts of Summers, an employee of the District.
Relator correctly contends that it could not be held liable under 42 USC § 1983 because states or departmental agencies such as relator sued in their official capacities are not persons subject to suit under 42 USC § 1983. Champagne v. Jefferson Parish Sheriff’s Office, 188 F.3d 312 (5th Cir.1999). As to plaintiffs respondent superior theory of liability, it should be noted that plaintiffs counsel stated at the hearing on the MSJ (and in his response brief) that his ease against relator was not based on respondent superior.
Relator contends that the trial court erred when it did not grant the MSJ as to plaintiffs negligent recommendation theory of liability because former or current employers do not have a duty to disclose prior criminal convictions of their employees to future employers, particularly prior criminal convictions |7that have been absolved by a gubernatorial pardon[6] and dismissed under LSA-C.Cr.P art. 893(D)(2). We find the trial court erred in failing to grant the motion for summary judgment as to plaintiffs negligent referral theory because plaintiff produced no evidence that relator breached any duty in this case. There was no evidence to indicate that the letters of recommendation were in any way false, misleading or mis-representative of Summers’ performance in his administrative position with relator. There is nothing to demonstrate that relator’s agents actively concealed anything about Summers when recommending him to a prospective employer. Further, there was no evidence that Summers had ever demonstrated any tendency toward sexual or other misconduct while he was employed by relator. Without more, the mere fact that relator’s employees did not divulge an employee’s eight-year-old expunged drug conviction that predated his tenure with that employer is insufficient to support a finding -of a breach of duty.
Moreover, plaintiff also failed to produce sufficient evidence to create an *515 issue as to causation. It is undisputed that the District, the hiring employer, never asked Summers about a criminal background. It was uncontested that Summers made no secret of his drug conviction around District employees or detainees. Indeed, Bob Tyler, then President of the | RCommission for the Florida Parishes Juvenile Justice District who was involved in the hiring of Summers, testified that Summers told him about the marijuana conviction and made no effort to conceal it. Other testimony revealed that Summers openly discussed the expunged marijuana conviction at the detention center and utilized it as part of his testimonial. The District did not remove Summers once his marijuana conviction came to light.
Additionally, there is simply no “ease of association” between an old drug conviction and sexual molestation of juveniles some twelve to thirteen years later. The drug conviction did not even occur while Summers was employed by relator; it occurred while Summers was employed by a prior employer approximately eight years before the time the letters of recommendation were written. The connection between the lack of disclosure and the plaintiffs ultimate harm is further attenuated by the fact that Summers received a full gubernatorial pardon for the marijuana conviction, which was set aside as an acquittal by court order. See Keaton v. Summers, 99-1192, 2000 WL 680337 (E.D.La.5/23/00). See also Francioni v. Rault, 518 So.2d 1175 (La.App. 4 Cir.), writ denied, 521 So.2d 1189 (La.1988).
Plaintiff also contended that relator violated LSA-R.S. 15:825.3, which states:
No operator, staff person, or employee of a juvenile detention, correction, or treatment facility shall be hired by the department until such person has submitted his fingerprints to the Louisiana Bureau of Criminal Identification and Information so that it may be determined whether or not such person has been convicted of or has pled nolo con-tendere to a crime listed in R.S. 15:587.1(C). If it is determined that such person has such a conviction or has entered a plea of nolo contendere to a crime listed in R.S. 15:587.1(0, that person shall not be hired.
LSA-R.S. 15:825.3 was added by 1986 La. Acts No. 760, § 1, and was effective January 1, 1987. Plaintiffs allegations that | nrelator was negligent in permitting a convicted felon to remain in the juvenile justice system in violation of LSA-R.S. 15:825.3 have no application to this case because the statute became effective January 1, 1987, after Summers was hired by relator. Moreover, the statute only applies to relator and not the Commission and does not require the retroactive removal of current employees of relator.
Plaintiff contends that LSA-Ch.C. art. 908 imposes a duty on relator and prevents relator from delegating any legal responsibility. That article states:
A. Except as provided in Article 906, the Department of Public Safety and Corrections shall have sole authority over the placement, care, treatment, or any other considerations deemed necessary from the resources that are available for children judicially committed to the department.
B. When care and treatment are to be provided by the department, either through facilities and programs operated by it or through contractual arrangements or through purchase of service arrangements for which the department provides funding, the child shall be committed to the department rather than to a particular institution or facility.
C. The court shall not divide legal and physical custody of a child when *516 assigning custody to the department in accordance with this Article or in accordance with any other statute or provision of law.
However, the statutes concerning the District indicate that, under the circumstances of this case, while relator had custody over the juvenile, the District (and not relator) had control and authority over its own employees. LSA-R.S. 15:1094.1 established the Florida Parishes Juvenile Justice Commission “to control, administer, and manage the affairs of the district.” The Commission’s purpose is “to assist and afford opportunities to children who enter the juvenile justice system, ... to become productive, law-abiding citizens of the community, parish, and state by the establishment of rehabilitative programs within a structured environment and to provide physical facilities and related services for children throughout the [ in[Florida] parishes ....” LSA-R.S. 15:1094.2. LSA-R.S. 15:1094.4 provides for the general authority of the Board:
A. The board may purchase or otherwise acquire, construct, reconstruct, rehabilitate, improve, repair, operate, lease as lessor or lessee, manage, and administer or enter into contracts for the management, administration, and operation of a juvenile detention facility or facilities, ...
B. The board may also authorize and approve, upon such terms as it may deem advisable, contracts of employment for a superintendent or administrator and other necessary personnel and contracts for legal, financial, engineering, and other professional services necessary or expedient for the conduct of its affairs.
LSA-R.S. 15:1094.5 states:
A. The board of commissioners shall be domiciled in the parish of Tangipahoa and shall have the power to sue and be sued. In the exercise of its powers to control, administer, and manage the affairs of the district, the board may incur debt and issue bonds, ... The board generally may perform any function and exercise any power necessary, requisite, or proper for the administration and management of the affairs of the commission ....
LSA-R.S. 15:1094.5 establishes the District’s independent juridical existence. The agreement by which the Center received payment of relator’s funds for housing prisoners under relator’s custody, through which relator was authorized to perform periodic inspections at the Center, and by which relator required the District to operate the Center in accordance with certain guidelines merely set forth a general outline of policy and procedure for the housing of DOC inmates, but the District was given the responsibility for implementing specific written policy, procedure and practice under the guidelines. The agreement does not take away from the District’s control of the Center. See Gullette v. Caldwell Parish Police Jury, 33,-440 (La.App. 2 Cir. 6/21/2000), 765 So.2d 464. See also Cooley v. State of Louisiana, 533 So.2d 124 (La.App. 4 Cir.1988).
This writ is granted insofar as the trial court’s denial of relator’s motion for summary judgment is concerned. Therefore, Inthe ruling of the trial court of March 14, 2001, is reversed. As to relator’s motion in limine, based on this court’s ruling that the motion for summary judgment should be granted, discussion of the motion is pretermitted as moot. Costs to be assessed to plaintiff.
WRIT GRANTED IN PART, DENIED IN PART.

. Initials are being used in this opinion to protect the identity of the juvenile victim.

. LSA-R.S. 15:1094 states, “The Florida Parishes Juvenile Justice District is hereby established as a political subdivision of the state, with a territorial jurisdiction throughout the Twenty-First and Twenty-Second Judicial Districts, including the parishes of Livingston, St. Helena, St. Tammany, Tangipahoa, and Washington.”

.It is unclear if the abuse of J.S. occurred in 1996 or 1997.

. LSA-C.Cr.P. art. 893(D)(2) states, in pertinent part:
Upon motion of the defendant, if the court finds at the conclusion of the probationary period that the probation of the defendant has been satisfactory, the court may set the conviction aside and dismiss the prosecution. The dismissal of the prosecution shall have the same effect as acquittal, except that the conviction may be considered as a first offense and provide the basis for subsequent prosecution of the party as a multiple offender, and further shall be considered as a first offense for purposes of any other law or laws relating to cumulation of offenses.

. The pardon in this case was a full pardon under LSA-Consl. art. 4 § 5 because it states that it restores all civil and citizenship rights and it was recommended by the Board of Pardons. The fact that the pardon contains language restoring Summers' right to bear arms does not mean it is not a full pardon. 1976-77 Op. Atty. Gen. No. 77-1224 states that while the customary full pardon granted by the governor has the effect of removing all Louisiana disabilities relative to bearing firearms, special language as required in federal law must be added to the pardoning language, if it is the wish of the governor to do so, in order to remove federal disabilities because of federal laws.