WICKER, Judge.
Michael A. Miceli, the plaintiff, appeals the dismissal of his suit for damages against his former employer, Universal Health Services, Inc., and several co-employees and/or supervisors, Jeanne Walters, Daryl Sue White, Lois Laughlin, and Betty Hanawalt. We affirm.
Mr. Miceli is an L.P.N. who was employed by River Oaks Psychiatric Hospital (owned by Universal Health) as a crisis counselor in July of 1985. He was fired from this position in July of 1986. Consequently, he sued Universal Health and several co-employees and supervisors, alleging wrongful termination of his employment contract, harassment, humiliation, and loss of reputation. The judge ruled that Mr. Miceli was an “at will” employee, that there was no written contract of employment, that Universal Health did not violate any of the conditions of his employment, and that he was not wrongfully discharged but was indeed fired for good cause.
Mr. Miceli alleges that the judge erred in denying him leave to amend and supplement his petition for the third time to increase his demand for damages above $20,-000.00 and that he erred in finding in favor of the defendants. He urges us to disregard the manifest error rule of Rosell v. ESCO, 549 So.2d 840 (La.1989), because two of the witnesses testified by video deposition.
*910 Many of the basic facts are not in dispute. Mr. Miceli was a licensed practical nurse with a B.A. degree, a former Vietnam-era Marine, a former undercover police officer, and a former elementary school teacher and bus driver. He had worked in the psychiatric ward of Charity Hospital before applying for the job at River Oaks and was planning to return to school part time to earn a degree in social work.
River Oaks was able to offer him a day job [he had worked the night shift at Charity], which would enable him to take classes at night. It also offered educational benefits in the form of tuition reimbursement. For these reasons Mr. Miceli took the job at River Oaks even though it entailed a cut in pay. He started work as an LPN II with the possibility of promotion to LPN III and a pay increase dependent upon a favorable review of his work. There was no written contract of employment between Mr. Miceli and River Oaks which promised him a job for a particular period of time or a raise at a stated interval nor was there any written side agreement which would reflect any such promise. Mr. Miceli alleges, however, that his discussions with Ms. Walters, the personnel director, implied that the promotion and raise would be implemented if he had a favorable review at the six-month period and that he could stay in the job at River Oaks for as long as he wanted.
Mr. Miceli began work as a crisis counselor, fielding telephone calls from people responding to River Oaks’ advertisements. His job was to encourage those who needed help to come to River Oaks if they could afford to do so or if they had insurance coverage. Otherwise, he was to refer to agencies which could help them for a reduced or no fee. Mr. Miceli filled out a triage form for each of these calls.
He applied for tuition reimbursement shortly after beginning work, but it was denied because he was still a probational employee. At his six month point he did not receive a promotion and raise; and, when he asked about it, he was told that such promotions and raises came only after the annual review.
In the meantime Mr. Miceli applied for admission to the graduate school of social work, and several of his supervisors gave him favorable recommendations. Daryl Sue White, one of his supervisors, made a mistake on the part of the recommendation form which asked her to rate him in certain categories from one to five. She reversed the instructions and, where a “one” was called for, she placed a “five” and vice versa. To get even Mr. Miceli concocted a “practical joke” consisting of a fake letter of rejection to graduate school due to Ms. White’s negative recommendation. On the bottom of the letter in his handwriting he inserted language calling her a bitch, reminding her of what happened in Psycho, and telling her she’d better be careful whenever she was in the shower. Ms. White was not amused. Mr. Miceli was called on the carpet about this, and a report was placed in his personnel file.
At around the same time Mr. Miceli con-fected another “joke” consisting of a triage form concerning a habitual caller to the crisis line. He filled out the form complaining about the woman, her problems, her voice; and he concluded by stating that he wasn’t paid enough to put up with people like her and that he might consider committing suicide.
River Oaks set up a termination interview with Mr. Miceli as a result of his two “jokes” and gave him the option of quitting or being fired. He turned in his keys and left without specifying which option he wanted, and River Oaks wrote it up as a resignation with a “do not rehire” notation.
Mr. Miceli was initially denied unemployment compensation, but the appeals tribunal eventually awarded him benefits and found that he was not fired for misconduct sufficient to warrant withholding benefits.
Mr. Miceli looked for a job unsuccessfully for nine months, and he alleged it was the unfavorable recommendation given out by River Oaks which kept him from finding a job. Eventually he went back to work at Charity Hospital, which terminated him for cause. He found other employment in the psychiatric ward at Ochsner Foundation Hospital, but it too terminated him for *911 cause. He also worked in the psychiatric ward at East Jefferson Hospital, which eventually terminated him. Mr. Miceli had completed his graduate work at the time of the trial and was working as a state investigator charged with looking into claims of patient abuse.
Mr. Miceli sued, alleging Ms. Laughlin wrote a letter falsely accusing him of making derogatory remarks about Ms. White, resulting in the loss of his job, and alleging Ms. Walters misled him to his detriment because he didn’t receive the promotions and raises he was promised and was dismissed contrary to the policy set out in River Oaks’ employee manual. He amended his petition to allege defamation and increase his demand for damages. He asked for damages for lost income; humiliation, embarrassment, and mental anguish; and defamation. He amended his petition a second time to eliminate the ad damnum clause.
On the first day of trial, October 16, 1989, Mr. Miceli dropped his demand for a jury, resulting in a request by River Oaks and the other defendants for a jury. Then Mr. Miceli asked to be allowed to amend his petition once again to decrease his damages below $20,000.00; and the court allowed this amendment.
Mr. Miceli testified on this first day, but the second day of trial he didn’t show up until four and a half hours after trial was scheduled. As a result the judge declared a mistrial and held Mr. Miceli in contempt of court. [Mr. Miceli later explained that he had had car trouble on the expressway coming from Metairie to Gretna.] On June 29, 1990, Mr. Miceli moved to amend his petition another time to raise his damages in excess of $20,000.00. Initially the judge granted his request, but the defendants opposed the amendment and asked for a hearing on the matter. The judge heard argument and rescinded his order permitting the amendment. The remainder of the testimony was heard on September 10 through 12, 1990. '
THE EMPLOYMENT CONTRACT
“A man is at liberty to dismiss a hired servant attached to his person or family, without assigning any reason for so doing_” La.C.C. art. 2747. Mr. Miceli concedes he had no employment contract but relies on Ms. Walters’ alleged representations and the employee handbook to argue an implied contract. If Mr. Miceli was, as the judge concluded, a terminable-at-will employee, then the reasons for his termination are irrelevant.
We have reviewed the employee handbook, and we do not find that it constitutes modification of Mr. Miceli’s terminable-at-will status. See Brannan v. Wyeth Laboratories, Inc., 526 So.2d 1101 (La.1988). Specifically, it reads, “Neither this handbook nor any provision in it constitutes a contract of employment or any other kind of contract.” Other relevant portions of the handbook include:
[E]mployees are expected to act in an exemplary manner at all times. All employees must adhere to established rules of conduct. Breach of these standards will result in discipline, up to and including termination.
The following are considered to be violations that will subject an employee to disciplinary measures. This list is not meant to be all-inclusive. Certain violations may result in immediate terminations at the discretion of the Personnel Director, depending on the circumstances involved.
[[Image here]]
Discourtesy to patients, doctors, employees or visitors.
[[Image here]]
Use of abusive or offensive language.
[[Image here]]
Spreading rumors, slander, gossip or lies resulting in harm to any employee, patient or the hospital.
[[Image here]]
Interfering with another employee’s work.
[[Image here]]
Failure to follow hospital policies or procedures as presented in the manual and/or as added to or amended by official policy-setting memoranda from the Administrator.
*912 [[Image here]]
Discipline and dismissal procedures have been established to insure that all employees are given fair treatment and an opportunity to improve their performance and conduct. Dismissal without warning is the right of the hospital in certain cases of unacceptable conduct on the part of the employee....
[[Image here]]
It is River Oaks Hospital’s intent to provide continuous employment to all employees. However, this employment is a mutual agreement between the hospital and the employee, and may be terminated by either of the following procedures.
[[Image here]]
2. Discharge is initiated by the hospital for violation of policy or standards of conduct, documented unsatisfactory performance, or other disciplinary reasons. In most cases, notice will be given through written counselings and discussions.
Furthermore, there is evidence to support the conclusion that Mr. Miceli was fired for cause.
The judge resolved questions of credibility against Mr. Miceli following four days of trial. We do not believe his conclusions were clearly wrong and decline to reverse his findings that Mr. Miceli was not wrongfully terminated. Rosell v. ESCO, supra. DEFAMATION
Mr. Miceli had to prove five things to support a claim of defamation: (1) defamatory words; (2) publication; (3) falsity; (4) malice, actual or implied; and (5) injury as a result. Brannan v. Wyeth Laboratories, Inc., supra. He has failed to prove either falsity or malice. Again, we do not believe the judge was clearly wrong in dismissing Mr. Miceli's claims against River Oaks and its employees.
THE AMENDMENT TO THE PETITION
A plaintiff may amend his petition only with permission of the judge or the consent of the other parties once the answer has been filed. La.C.C.P. art. 1151. Mr. Miceli had already been allowed to amend his several times, and we do not believe the judge abused his much discretion in refusing yet another amendment under these circumstances. See Shurman v. Lewis, 465 So.2d 78 (La.App. 5th Cir. 1985).
We affirm dismissal of Michael Miceli’s claims against Universal Health Services, Inc.; Jeanne Walters; Daryl Sue White; Lois Laughlin; and Betty Hanawalt. Mr. Miceli must pay the costs of this appeal.
AFFIRMED.