839 So.2d 57 (2002)
Adele George LOUVIERE and Rogers George
v.
Chad LOUVIERE, Jerry Larpenter, Individually, and as Terrebonne Parish Sheriff.
Debra Ann Deroche, Norman Joseph Deroche, Jr., and Their Two Minor Children
v.
Keith Estevens, Chief of Police of Thibodaux Police Department, City of Thibodaux Police Department, City of Thibodaux, and ABC Insurance Company.
Glynn Duplantis, Individually and on Behalf of His Minor Son, Kyle Duplantis; Phyllis Duplantis, Individually and as Tutrix of the Minor Child, Cammi Marie Bourg; and Roddy Duplantis
v.
Chad Louviere, Jerry Larpenter, Keith H. Estevens, the City of Thibodaux Police Department, the City of Thibodaux, Sphere Drake Insurance Company, Louisiana Sheriffs Risk Management Program, and Profit Protection, Inc.
Erin and Brandee Theriot
v.
Thibodaux City Police Department, and Chad Louviere.
Joseph and Monica Eskind
v.
Thibodaux City Police Department, and Chad Louviere.
Janene C. Blanchard, Wife of/and Ken Blanchard; Their Minor Child, Ashley Blanchard; George Cavalier, Jr. and Diane Cavalier
v.
Chad Louviere, Jerry Larpenter, Individually and as Terrebonne Parish Sheriff, Thibodaux City Police Department, and Argent Bank.
Nos. 2001 CA 0089 to 2001 CA 0094.
Court of Appeal of Louisiana, First Circuit.
June 5, 2002.
Writ. Denied October 25, 2002.
*60 Daniel J. Caruso, Robert L. Redfearn, Jr., New Orleans, David L. Landry, Thibodaux, Counsel for Plaintiffs-Appellees/Cross Appellants, Adele George Louviere and Rogers George.
L. Lane Roy, Dawn L. Morris, Lafayette, Gus A. Fritchie, III, New Orleans, Counsel for Defendant/Appellant, Coregis Insurance Company.
David Stone, Alexandria, Counsel for Defendant/Appellee, Chad Louviere.
William F. Dodd, Joseph J. Weigand, Jr., Houma, Counsel for Defendant/Appellee, Jerry Larpenter, Sheriff, Terrebonne Parish.
Alan A. Zaunbrecher, Dennis J. Phayer, Metairie, David C. Peltier, Thibodaux, Counsel for Defendants/Appellants, Keith H. Estevens, the City of Thibodaux, and the Thibodaux Police Department.
Michael J. Samanie, Herbert W. Barnes, Houma, John White, Baton Rouge, Counsel for Plaintiffs/Appellees, Glynn Duplantis, et al.
Dexter A. Gary, Houma, Counsel for Plaintiffs/Appellees, Brandee and Erin Theriot and Monica and Joseph Eskind.
Daniel A. Claitor, Baton Rouge, Counsel for Plaintiffs/Appellees, Janene C. Blanchard, et al.
Jena Smith-Malfatti, David S. Bland, New Orleans, Counsel for Plaintiffs/Appellees, Debra Ann Deroche and Norman Joseph Deroche, Jr. and their two minor children.
Before: GONZALES, FOGG, FITZSIMMONS, GUIDRY, and CIACCIO,[1] JJ.
GONZALES, J.
This case arose out of a tragic crime spree committed in Terrebonne Parish by Terrebonne Parish Sheriff's Office (TPSO) *61 Deputy Chad Ray Louviere on October 17, 1996. While we have great sympathy for the victims and families of these tragic crimes, we note that we are constrained to follow the law.
On that date, Mr. Louviere, while on duty and driving his TPSO vehicle on Bull Run Road in Houma, turned on his flashing lights and pulled over an unsuspecting motorist, Debra Deroche. Mr. Louviere overpowered Ms. Deroche, forced her into his vehicle, and drove into the nearby cane fields, where he committed various sexual crimes.[2]
After Mr. Louviere let her go free, Ms. Deroche immediately returned home and called her sister, who lived next door. Ms. Deroche's sister called the TPSO to alert them to the situation. The TPSO contacted Mr. Louviere over the radio and ordered him to meet another officer at a designated location; however, Mr. Louviere ignored these orders.
Mr. Louviere then proceeded to drive to the Argent Bank in Houma, where his estranged wife was working. When he arrived, Mr. Louviere cleared the customers out of the bank and held six female bank employees, including his wife, Adele, hostage. Shortly thereafter, he shot and killed one of the bank employees, Pamela Duplantis. He soon released two other bank employees, but kept his estranged wife and the two remaining employees hostage. While holding these three women hostage, he committed various sexual crimes against them. One of the women was released later that night, while his wife and the last bank employee remained hostage until shortly before noon the following day, when Mr. Louviere surrendered and released them.
Thereafter, the victims, along with various family members, filed separate lawsuits based on the crime spree. Suits were filed against Mr. Louviere; the City of Thibodaux (his former employer), the Thibodaux Police Department and Keith H. Estevens (the Thibodaux Police Chief), (collectively referred to as the Thibodaux defendants); Coregis Insurance Company (the excess insurer for the City of Thibodaux); the Terrebonne Parish Sheriff's Office; Sheriff Jerry Larpenter; and several other parties who are not pertinent to this appeal, alleging negligence on the part of the defendants.[3] The TPSO and Sheriff Larpenter settled with the plaintiffs prior to trial.

THE NEGLIGENT REFERRAL ISSUE
The claims against the Thibodaux defendants were based upon negligent hiring, training, retention, and referral by the Thibodaux Police Department under 42 U.S.C.A. § 1983 and/or Louisiana state law. Mr. Louviere was nineteen years old when he was hired by the Thibodaux Police Department in June of 1992 after completing a civil service test, an agility test, an oral review board, a physical exam, a psychological exam, and a background criminal check. Mr. Louviere voluntarily resigned from the Thibodaux Police Department in December of 1995 and went to work for a flooring company. Five months *62 later, in May of 1995, he began working for the TPSO.
The plaintiffs claim that if the Thibodaux defendants had disclosed certain information to the TPSO, the TPSO would not have hired Mr. Louviere, and Mr. Louviere would not have committed the crimes that resulted in the injuries to the plaintiffs.
Louisiana Civil Code article 2315 provides a cause of action for negligence. It provides, in part "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. C.C. art. 2315. We have found only two published Louisiana cases in which suit was filed based on a claim of negligent referral. In both of them, it was determined that there was no negligent referral. Since there is no Louisiana case finding a set of facts that constitute negligent referral, a logical argument can be made that Louisiana law does not recognize such a cause of action.
Louisiana law imposes no affirmative duty on a former employer to divulge employment information (or non-employment information) to a subsequent employer.
In Francioni v. Rault, 518 So.2d 1175 (La.App. 4 Cir.), writ denied, 521 So.2d 1189 (La.1988), a wrongful death action against a former employer resulted from the murder of plaintiffs' daughter by a co-worker. Rault, the tortfeasor, resigned from Masonite Corporation after he was caught embezzling funds. Three months later, Rault was hired by LEDCO after being referred by an employment agency, EDP. When EDP called Masonite to verify Rault's dates of employment, Masonite verified the former employment but did not mention the embezzlement. In reliance on EDP's recommendation, LEDCO hired Rault.
At some point thereafter, Masonite became aware of facts that lead the company to suspect Rault was guilty of cutting brake lines on the car of the worker who replaced him, as well as breaking into Masonite's offices. Masonite reported the crimes to the police, but did not alert Rault's current employer. It was then discovered that Rault had also embezzled funds from LEDCO.
The Fourth Circuit, in an opinion by Judge Gulotta, affirmed the trial court's granting of summary judgment (in an opinion by Judge Plotkin under the old summary judgment law) in favor of Masonite, finding Masonite breached no duty to protect the plaintiff's daughter from the unforeseeable violent acts by Rault, perpetrated months after he left his employment with Masonite.
The only other Louisiana case on negligent referral, K.S. v. Summers, XXXX-XXXX (La.App. 1 Cir. 5/23/01), 799 So.2d 510, writ denied, XXXX-XXXX (La.10/5/01), 798 So.2d 974, involved a claim of sexual assault and molestation of a minor incarcerated in a juvenile detention center by the center's superintendent, Summers. Plaintiff sued the abuser's former employer, the State of Louisiana, on a negligent referral theory based on the State's knowledge of Summers' prior conviction on drug possession, and its negligence in recommending Summers for the job of superintendent without disclosing the prior conviction. The trial court denied a motion for summary judgment in favor of the former employer, the State, and the State took writs. This court reversed that judgment and granted the motion for summary judgment, finding no breach of duty by Summer's prior employer in failing to disclose Summer's prior drug conviction.
In the present case, to support their claim of a negligent referral, the plaintiffs argue that the following information would *63 have impacted TPSO's decision to hire Mr. Louviere: a civil suit filed by Aggie Young; a "To Whom it May Concern" referral letter; a psychological report on Mr. Louviere from Bayou Oaks Hospital; and an eighteen-page personal history form filled out by Mr. Louviere when he applied to the Thibodaux Police Department.
While employed at the Thibodaux Police Department, Mr. Louviere arrested Aggie Young, who later filed an excessive force complaint and a civil suit against Mr. Louviere. The lawsuit was settled out of court. Although the TPSO claimed it had not been informed of the civil suit, the evidence at trial showed that Mr. Louviere informed the TPSO of the suit himself, stating on his personal history form when applying with the TPSO that he had been named in a civil lawsuit related to law enforcement.
The "To Whom It May Concern" generic-type referral letter, written by Chief Estevens on Mr. Louviere's behalf, summarized the satisfactory performance evaluations that Mr. Louviere received during his employment with the Thibodaux Police Department and stated that Louviere would be an asset as an employee. Mr. Louviere did receive satisfactory job performance evaluations during his employment with the Thibodaux Police Department; thus, this letter was not misleading.
Regarding the psychological report that the TPSO refers to in its negligent referral claim, Chief Estevens testified that he had never read that psychological report. Further, prior to being hired by the Thibodaux Police Department, Mr. Louviere underwent a psychological evaluation that determined that he was psychologically fit for the police department.
Regarding the eighteen page personal history form filled out by Mr. Louviere and submitted to the Thibodaux Police Department before Mr. Louviere's employment, in response to the question "Have you ever been confined to a hospital?" it reveals the following: "Burned as a childI was confined to the infirmary at Inverness, Scotland. U.K." and "Sexually molested as a childsuffered from a stress disorder and confined to Bayou Oaks, Houma, LA."
Although Sheriff Larpenter testified that Mr. Louviere would not have been hired by the TPSO if they had known he had been sexually molested as a child and had been treated at Bayou Oaks after seeing his molester and committing an aggravated assault against a girlfriend, in fact it was the TPSO that responded to the incident which lead to the treatment at Bayou Oaks. It is ironic that the TPSO seeks to hold Thibodaux responsible for negligent referral for not sharing information which Thibodaux had in its files, yet the TPSO claims that it was not responsible for knowing about information contained in its own files.
However, Sheriff Larpenter testified that in July of 1996, he became aware of a 1991 assault incident involving Mr. Louviere through one of his employees. At that time, Sheriff Larpenter reviewed the TPSO report on the incident, which revealed that Mr. Louviere had been sexually molested as a child and, after having seen the molester and breaking up with his girlfriend, committed an aggravated assault at the girlfriend's home. It also revealed that no charges would be filed if Mr. Louviere sought medical treatment.
After reviewing the report, Sheriff Larpenter met with Mr. Louviere's uniform commander, Captain Usie, Captain Jackson, and the attorney for the sheriff's office, Mr. Bill Dodd, to determine whether Mr. Louviere would be kept on as an *64 officer at the TPSO. It was decided that Mr. Louviere would be kept on.
Further, Sheriff Larpenter testified at trial that, while Mr. Louviere was working for the TPSO in August of 1996, an excessive force complaint was made against him. Sheriff Larpenter testified that the TPSO investigated the complaint and determined that the excessive force complaint was unfounded, and it did not warrant disciplinary action against Mr. Louviere. We find no negligence by the Thibodaux defendants, as the evidence fails to establish that TPSO would have declined to hire Mr. Louviere if provided the alleged withheld documents.
It is ironic that the TPSO sought to hold the Thibodaux Police Department responsible for a negligent referral, yet when TPSO became aware of the information it seeks to hold the Thibodaux Police Department responsible for, it did nothing. We find that the facts of this case does not meet the legal criteria for a negligent referral action.
In the case of Mr. Louviere, as in Summers, there was no evidence to indicate that the letters of recommendation were in any way false, misleading or misrepresentative of Mr. Louviere's job performance with the Thibodaux Police Department. The record clearly shows that Mr. Louviere received favorable job performance reviews while with the Thibodaux Police Department. There is nothing to demonstrate that the Thibodaux Police Department actively concealed anything about Mr. Louviere when recommending him to a prospective employer.
Further, as in Summers, the plaintiffs failed to produce sufficient evidence to create an issue as to causation. It is undisputed that the TPSO, the hiring employer, never conducted a background check of Mr. Louviere. Further, while the TPSO asserts that the Thibodaux Police Department had the duty to disclose to the TPSO that Mr. Louviere had been to a mental health facility as a teenager after threatening a girlfriend, the TPSO became aware of these facts approximately three months before the occurrence of these crimes and decided to continue to employ him. The Summers case is the law of this circuit, and it cannot be distinguished from the case at hand.
Further, we note that if a former employer gives negative information about an employee to a prospective employer, this can result in exposure to a defamation claim. Woodard v. University of Utah, 2000-789 (La.App. 3 Cir. 11/2/00), 776 So.2d 528, writ denied, XXXX-XXXX (La.1/26/01), 781 So.2d 1265; Hayden v. Schulte, 97-0422 (La.App. 4 Cir. 10/29/97), 701 So.2d 1354, writ denied, 97-2941 (La.2/6/98), 709 So.2d 737; Miceli v. Universal Health Services, Inc., 606 So.2d 908 (La.App. 5 Cir.), writ denied, 609 So.2d 227 (La.1992).
Finally, even if this case met the legal criteria for a negligent referral, there is no ease of association between the favorable recommendation given by the Thibodaux Police Department to the TPSO and Mr. Louviere's later crime spree.
As stated by this court in Perkins v. Entergy Corporation, 98-2081, 2082, 2083 (La.App. 1 Cir. 12/28/99), 756 So.2d 388, writs granted and judgment affirmed, XXXX-XXXX, 1387, 1440 (La.3/23/01), 782 So.2d 606:
Ease of Association:
The legal cause issue in Sibley [v. Gifford Hill and Company], 475 So.2d 315 [La.1985], is very similar to the issue at hand. In that case, the boom of a crane on the premises of the utility company's industrial customer came so close to an overhead power line that electrical *65 arcing occurred, causing fatal injury to one man and serious injury to another. The plaintiffs contended that the arcing was caused by an electrical power surge. The Louisiana Supreme Court recognized that the outcome of the case depended on the extent to which the court would impute liability to an electric company for unusual accidents occurring within the plants of their customers. The court stated:
While the causal relation issue involves an analysis of the defendant's conduct as a contributing factor in the injury, the duty issue is a policy inquiry into whether the defendant's duty to the victim included protection against the particular injury. Green, The Causal Relation Issue in Negligence Law, 60 Mich.L.Rev. 543 (1962). LP & L arguably owed a duty to its customers to prevent surging because the customer's plant or equipment might be damaged by a sudden voltage surge. However, this duty did not reasonably encompass the risk that a grounded person on the customer's premises might place a metal object close enough to the transmission line for arcing to occur contemporaneously with the surging, yet far enough away to avoid close proximity arcing. Moreover, there is no ease of association between the duty breached and the damages sustained. Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972). (Emphasis in original.)
We conclude that any voltage surge created by LP & L's equipment was not a legal cause of the injuries....
Sibley, 475 So.2d at 319. The court further stated there was no support in the record for a conclusion that LP & L supplied electricity over a private transmission line which it knew or should have known was unreasonably dangerous. Sibley, 475 So.2d at 319-320.
When we consider the facts of the instant case in light of the principles set forth in Sibley, the ease of association is clearly more attenuated here, where the particle or friction induced explosion occurred three hours after the voltage sag, than in Sibley, where an electrocution occurred simultaneously with the power surge.
When considering limitation of liability issues, whether phrased in terms of scope of duty or legal cause or proximate cause, it can be useful to consider whether "too much else has intervenedtime, space, people, and bizarreness." See Roberts, 605 So.2d at 1058 (quoting David W. Robertson, Reason Versus Rule in Louisiana Tort Law: Dialogues on Hill v. Lundin & Associates, Inc., 34 La.L.Rev. 1 (1973)). In this matter, a little over three hours elapsed between the voltage sag and the explosion (time), the electrical fault occurred 15 miles away from ALAC (space), ALAC's actions played a substantially more direct role in the explosion (people), and the Schmidt report references "event randomness" (bizarreness). Thus, liability should not be imposed.
Perkins, 756 So.2d at 411-412. [Footnotes omitted.]
In the present case, Mr. Louviere, before his employment by the Thibodaux defendants, was examined by a psychologist and it was recommended that Mr. Louviere be hired. During the time Mr. Louviere worked for the Thibodaux Police Department, he received consistently positive evaluations from his supervisor. He voluntarily resigned from his job at the Thibodaux Police Department in December of 1995. He then began working at a flooring *66 company, and five months later, he started work at the TPSO.
In May of 1996, while Mr. Louviere worked at the TPSO, he and his wife separated. Later that month, on three separate occasions he went to Adele's apartment to pick up things and refused to leave until Adele had sex with him. On a Friday in August of 1996, after pushing his way into Adele's apartment, he struck her in the face, threatened to kill her and her grandmother, and then raped Adele. On the following Saturday and Sunday, Adele went to his apartment to have sex with him, as he had threatened to come looking for her if she did not do so. She testified that she was afraid to report him to the police because of his threats.
Adele thereafter moved in with her father, Rogers George, and had no more contact with Mr. Louviere until October 11, 1996. That day, as she was riding to work with another woman, Mr. Louviere made a U-turn in his TPSO vehicle and pulled her over to get her to sign some paperwork in connection with the divorce proceeding. Adele testified that she was "terrified," and "freaked out" because Mr. Louviere had pulled her over.
Adele testified that she immediately called her father and asked him to get Mr. Louviere to leave her alone. Mr. George called Sheriff Larpenter that afternoon, which was a Friday. When Sheriff Larpenter returned Mr. George's call on Monday, October 14, 1996, Mr. George requested that Sheriff Larpenter get Mr. Louviere to leave Adele alone. Sheriff Larpenter then met with Mr. Louviere in response to that complaint and instructed him to handle his domestic problems in civil court. On October 17, 1996, Mr. Louviere began his crime spree.
In applying the limitation of liability issues and considering whether "too much else has intervenedtime, space, people, and bizareness," Perkins, 756 So.2d at 412-413, quoting Roberts v. Benoit, 605 So.2d 1032, 1058 (La.1991), (quoting Robertson, 34 La.L.Rev. 1 (1973)), we find that too much else had intervened in this case for the Thibodaux Police Department to be liable for Mr. Louviere's violent crime spree.
It seems clear from a careful study of the voluminous record that Mr. Louviere began to have problems when he separated from his wife during his employment with the TPSO and that his violence toward his wife began during that time. Eventually, the threatening behavior and violence toward his wife spilled over onto an innocent motorist, Ms. Deroche, and then onto his wife and other employees of the bank where his wife was employed.
The foreseeability issue discussed in Perkins was also discussed in other benchmark cases in our law. For example, in Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (La.1972), which this court relied upon in Perkins, the court found that:
This defendant's alleged misconduct, its alleged breach of duty, was in leaving the ladder leaning against the house unattended. The risk encountered by the plaintiff which caused her harm was the ladder lying on the ground where it was placed by another, over which she tripped as she moved to protect the child. The record is devoid of any evidence tending to establish that the defendant could have reasonably anticipated that a third person would move the ladder and put it in the position which created this risk, or that such a `naked possibility' was an unreasonable risk of harm.
Hill, 256 So.2d at 623.
In Roberts, an off-duty sheriff's deputy, who was drinking and engaging in horseplay *67 with a gun, accidentally shot the victim. The court found that the injury to the victim was not foreseeable, as the court did not expect the sheriff to foresee that one of his officers would violate the regulation of not handling firearms while intoxicated and, further, that one of his officers would violate the elementary standards of conduct relative to the use of firearms. That court found:
In determining the limitation to be placed on liability for a defendant's substandard conducti.e., whether there is a duty-risk relationshipwe have found the proper inquiry to be how easily the risk of injury to plaintiff can be associated with the duty sought to be enforced. Hill, supra. Restated, the ease of association inquiry is simply: "How easily does one associate the plaintiff's complained-of harm with the defendant's conduct? ... Although ease of association encompasses the idea of foreseeability, it is not based on foreseeability alone." Crowe, [The Anatomy of a Tort-Greenian, as Interpreted by Crowe who has been influenced by Malone-A Primer, 22 Loy.L.R. 903 (1976) ] at 907. Absent an ease of association between the duty breached and the damages sustained, we have found legal fault lacking. Hill [v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620]; Sibley v. Gifford Hill and Co., Inc., 475 So.2d 315, 319 (La.1985); See also Williams v. Southfield School, Inc., 494 So.2d 1339, 1342 (La.App. 2d Cir.1986).
Roberts, 605 So.2d at 1045.
The same lack of foreseeability found in Hill and Roberts is found in the present case.

THE TRIAL COURT JUDGMENT
After a trial on the merits, the trial court ruled as follows:
A bifurcated trial of the above consolidated cases was held. A bench trial was held on the claims of Cammi Marie Bourg, Glynn Duplantis, Phyllis Duplantis, Roddy Duplantis and Kyle Duplantis. A bench trial was also held on defendant's [sic] claims against Sheriff Jerry Larpenter and the Terrebonne Parish Sheriff's Office and the reconventional demand of the Terrebonne Parish Sheriff's office against defendants.
A jury trial was held on all other claims as to all other parties. Various stipulations were entered prior to trial including the stipulation that Coregis Insurance Company. [sic] provided insurance coverage.
Considering the law, evidence, exhibits, stipulations, arguments of counsel, and the jury rendered verdicts as reflected by the written answered interrogatories propounded upon it by the Court,
IT IS ORDERED, ADJUDGED AND DECREED that the verdict of the jury as reflected in its answers to interrogatories, Part ILiability and Part IIDamages, is adopted by the Court and made judgment of this Court as to all parties, plaintiff and defendant, and is further adopted and made the judgment of this Court as to those matters tried to the bench regarding Cammi Marie Bourg, Glynn Duplantis, Phyllis Duplantis, Roddy Duplantis, Kyle Duplantis, Chad Louviere, Keith Estevens, the City of Thibodaux, the Thibodaux Police Department, and Coregis Insurance Company. Further,
IT IS ORDERED, ADJUDGED AND DECREED that the following findings are made:
1. Chad Louviere intentionally injured Adele George Louviere, Janene Blanchard, Debra Deroche, Brandee Theriot, Monica Eskind and intentionally *68 killed Pamela Duplantis, and also violated the plaintiffs' civil rights, both causing damage to the plaintiffs; and
2. The City of Thibodaux, the Thibodaux Police Department, and Keith Estevens were negligent, said negligence causing damage to plaintiffs; and
3. The City of Thibodaux, the Thibodaux Police Department, and Keith Estevens violated plaintiffs' civil rights causing damage to plaintiffs; and
4. Jerry Larpenter, in his capacity as Sheriff of Terrebonne Parish and/or the Terrebonne Parish Sheriff's Office was negligent, said negligence causing damage to plaintiffs; and
5. Jerry Larpenter, in his capacity as Sheriff of Terrebonne Parish and/or the Terrebonne Parish Sheriff's Office, violated plaintiff's civil rights causing damage to plaintiffs; and
6. The percentage of negligence attributable to Keith Estevens, the City of Thibodaux, the Thibodaux Police Department and Coregis Insurance Company is ninety (90%) per cent; and
7. The percentage of negligence attributable to Sheriff Jerry Larpenter and/or the Terrebonne Parish Sheriff's Office is ten (10%) per cent.
The trial court awarded damages totaling more than $10,000,000.00 to the various plaintiffs.

THE ASSIGNMENTS OF ERROR
Thibodaux Police Chief Estevens, the City of Thibodaux, the Thibodaux Police Department, and Coregis Insurance Company are appealing that judgment and make the following assignments of error:[4]
Assignment of Error No. 1
Appellee's liability claims against Thibodaux fail to pass duty/risk muster under either of their alternative theories of negligent hiring or negligent referral; accordingly, the judgment against Thibodaux should be reversed outright and in its entirety.
Assignment of Error No. 2
The trial record is devoid of any evidence substantiating recovery against Keith Estevens under either of appellees' alternative theories of negligent hiring or negligent referral; accordingly the judgment against Keith Estevens should be reversed and all awards against him vacated.
Assignment of Error No. 3
The trial court erred in allowing recovery of LeJeune damages by persons lacking any observations or contemporaneous sensory perception of the injuries criminally inflicted by Chad Louviere upon their family members.
Assignment of Error No. 4
Under any reasonable quantum standard, the jury abused its discretion in awarding damages on certain claims; said awards should be reduced to the highest amount the jury in a reasonable exercise of its discretion could have awarded.
Assignment of Error No. 5
The trial court erred in failing to find that the Theriot petition filed over twenty-two months after Louviere's crimes was not untimely, prescribed on its face, and subject to dismissal.
Assignment of Error No. 6 *69 The trial court erred in admitting the "Gulfport Documents" and in giving its spoliation charge concerning them.
Assignment of Error No. 7
The trial court erred in failing to instruct the jury to consider Louviere's fault.
Assignment of Error No. 8
The trial court erred in allocating any fault to Thibodaux as any fault not attributed to Louviere falls on the shoulders of the Terrebonne Sheriff's Office.
Assignment of Error No. 9
The trial court erred in allocating any fault to Thibodaux as Louviere's torts were committed outside the course and scope of his employment as a sheriff's deputy.
Assignment of Error No. 10
The trial court erred by entering one judgment in six consolidated cases where not all defendants were named by all plaintiffs.
Assignment of Error No. 11
The trial court erred in failing to apply La. R.S. 13:5106 regarding the damage cap to all state law claims against Thibodaux.
Assignment of Error No. 12
The trial court erred in awarding civil rights damages as plaintiffs failed to properly allege § 1983 claims.
Assignment of Error No. 13
The trial court erred in failing to apply state law to the Duplantises' civil rights claim for the wrongful death and survival of Pam Duplantis.
Assignment of Error No. 14
The trial court erred in awarding civil rights damages for loss of familial relationships.
Assignment of Error No. 15
The trial court erred in awarding damages for civil rights violations because plaintiffs did not carry their burdens of proving culpability and causation under § 1983.
Assignment of Error No. 16
The trial court erred in awarding certain plaintiffs' damages against Estevens in his individual capacity as plaintiffs failed to either allege or prove § 1983 claims against Estevens.
Assignment of Error No. 17
The trial court erred in granting punitive damages to plaintiffs under § 1983 against Thibodaux.
Assignment of Error No. 18
The trial court erred in awarding attorneys' fees for violations of plaintiffs' civil rights on a contingent fee basis.
Assignment of Error No. 19
The trial court erred in admitting the "Gulfport documents" absent proper authentication.
Assignment of Error No. 20
The trial court erred in permitting the testimony of Louviere to be read into the record as Louviere was not unavailable and Thibodaux was deprived of their right of cross-examination.
Adele Louviere and Rogers George also appealed the judgment and make the following assignments of error:
1. The trial court erred in allowing defendants to argue, and in submitting Jury Interrogatory No. 9 asking the jury to decide, whether Adele George Louviere was negligent and whether her negligence was a cause of damages and also erred in including Adele George Louviere's name in Jury Interrogatory No. 10 asking the jury to assign a percentage of negligence to the negligent parties.
2. The damages awarded to Adele George Louviere for her (a) past, present and future physical pain and suffering, *70 (b) past, present and future mental pain and suffering, embarrassment and humiliation, (c) loss of enjoyment of life, and (d) violation of her civil rights are inadequate and should be increased.
3. The attorneys' fees awarded to Adele George Louviere and Rogers George should be increased consistent with any increase in the damages awarded to Adele George Louviere and for the services in connection with the appeal of this matter.
We first address the assignments of error made by the Thibodaux defendants and Coregis Insurance Company.

ASSIGNMENT OF ERROR NO. 7MR. LOUVIERE'S FAULT
It is the law of this circuit, and the second and third circuit courts of appeal, that the fault of the intentional tortfeasor should be quantified along with the fault of negligent parties.
The fundamental error of the trial court in this case was its failure to quantify the fault of all who were at fault. In Bell v. Ayio, 97-0534 (La.App. 1 Cir. 11/13/98), 731 So.2d 893, writ denied, 98-3115 (La.2/5/99), 738 So.2d 7, this court made the following analysis:
Louisiana Civil Code article 2323 provides:
A. An any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable. If a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss.
B. The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability.
C. Notwithstanding the provisions of Paragraphs A and B, if a person suffers injury, death, or loss as a result partly of his own negligence and partly as a result of the fault of an intentional tortfeasor, his claim for recovery of damages shall not be reduced.
This wording of the Civil Code article was the result of a 1996 amendment. 1996 La. 1st Ex.Sess., Acts. No. 3, § 1. The Louisiana Supreme Court, in Keith v. United States Fidelity & Guaranty Company, 96-2075 (La.5/9/97), 694 So.2d 180, 182-183, stated:
Comparing La.Civ.Code art. 2323, as amended, to its predecessor, it is apparent that the basic structure for comparative fault is unchanged. However, we observe that the Legislature added more specific language to Art. 2323 making it mandatory for the determination of the percentage of fault of all persons contributing to an injury, whether those persons are unidentified non-parties, statutorily immune employers, or others.

* * * * * *
After carefully considering Act 3, we find that the legislative amendment of La.Civ.Code art. 2323 was *71 procedural legislation. Act 431 of 1979 amended and reenacted La.Civ. Code arts. 2103, 2323, and 2324 to usher a comparative fault system into Louisiana. This act eliminated the doctrine of contributory negligence and provided the framework for a comprehensive scheme of loss apportionment in multi-party litigation. Since the adoption of a pure comparative fault system, it has been the task of the factfinder to allocate shares of negligence.
Keith, 694 So.2d at 182-83 (Citations omitted.)
Following the dictates of Keith, as we are constrained to do, it was legal error for the trial court to fail to quantify the fault of Fatonya, who was not a party to this case, but nonetheless was clearly at fault for stomping on April's ankle and causing her injuries.
Where the trial court commits legal error by applying an incorrect legal standard, this court is required to determine the facts de novo from the entire record and render a decision on the merits. Noveh v. Broadway, Inc., 95-2081 (La.App. 1st Cir.5/10/96), 673 So.2d 349, 353, writ denied, 96-1431 (La.9/13/96), 679 So.2d 109; Gentile v. Baton Rouge General Medical Center, 95-0348 (La.App. 1st Cir.11/9/95), 665 So.2d 422, 431. Therefore, based on the legal error made by the trial court, we review the liability issue in this case de novo.

Bell, 731 So.2d at 896-897.
Recently the Louisiana Supreme Court, in Wallmuth v. Rapides Parish School Board, XXXX-XXXX (La.4/3/02), 813 So.2d 341, cited Bell v. Ayio with approval. In Wallmuth, the trial court rendered a judgment that failed to assess fault against an intentional tortfeasor and assessed fault 100% against the school board. The court of appeal in Wallmuth made a de novo review and rendered judgment finding the school board 70% at fault and the intentional tortfeasor 30% at fault. Thereafter, the Louisiana Supreme Court in Wallmuth agreed with the appellate court that the trial court had committed legal error in refusing to assess fault against the intentional tortfeasor. The Louisiana Supreme Court conducted its own de novo review, reversing the judgment against the school board and dismissing the claims against it entirely.
The Second Circuit Court of Appeal, in Morrison v. Kappa Alpha Psi Fraternity, 31805 (La.App. 2 Cir. 5/7/99), 738 So.2d 1105, writs denied, 99-1668, 1607, 1622, (La.9/24/99) 747 So.2d 1120, 749 So.2d 634, 635, showed its approval of comparing the fault of an intentional tortfeasor with negligent parties. That court stated:
Plaintiffs argue that the trial court erred in allowing the jury to apportion fault to Jessie Magee, an intentional tortfeasor, and in refusing to instruct the jury on fault apportionment as set forth by the supreme court in Veazey v. Elmwood Plantation Associates Ltd., 93-2818 (La.11/30/94), 650 So.2d 712.
A divided supreme court in Veazey, supra, held that generally, negligent tortfeasors should not be allowed to reduce their fault by the intentional act of another when they had a duty to prevent such intentional conduct. Veazey involved the interpretation of La. C.C. art. 2323, Louisiana's comparative fault provision, prior to its overhaul by the legislature in 1996.
In the 1996 Extraordinary Legislative Session, the legislature amended Civil Code articles 2323 and 2324 to require that fault be allocated to all persons causing a plaintiff's injuries (La. C.C. art. 2323) and to limit liability of each wrongdoer, with certain exceptions, *72 to their percentage of fault (La.C.C. art. 2324).
In Keith v. United States Fidelity & Guaranty Company, 96-2075 (La.05/09/97), 694 So.2d 180, the supreme court held that the 1996 revision of La. C.C. art. 2323 was procedural and to be applied retroactively.
La. C.C. art. 2323 as amended by Act Three of 1996 provides in part:
A. In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss.
B. The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability. (Emphasis added).
Given the clear pronouncement of our supreme court on this issue, we find that the trial court properly instructed the jury to compare the fault of all involved actors.
Morrison, 738 So.2d at 1112-1113. [Footnotes omitted.]
Further, the Third Circuit Court of Appeal, in Muse v. Dunbar, 97-582 (La.App. 3 Cir. 6/10/98), 716 So.2d 110, writs denied, 98-1851, 1870 (La.11/6/98), 727 So.2d 448, a case involving an intentional tortfeasor and negligent tortfeasors, quantified the fault of the intentional tortfeasor and the negligent tortfeasors and also declined to apply the Veazey analysis.
In the recent case of Junot v. Morgan, XXXX-XXXX (La.App. 1 Cir. 2/20/02), 818 So.2d 152, this court affirmed the trial court's apportionment of fault that quantified the fault of the intentional tortfeasor and the negligent tortfeasor.
Under the law, we find that the trial court erred in failing to instruct the jury to quantify the fault of Mr. Louviere. Where the trial court commits legal error by applying the incorrect legal standard or principle, this court is required to determine the facts de novo from the entire record and render a decision on the merits. Johnson v. Vinson Guard Service Inc., 92-2187 (La.App. 1 Cir. 3/11/94), 636 So.2d 914, 916, writ not considered, 94-1661 (La.9/2/94), 642 So.2d 1280.

ASSIGNMENTS OF ERROR NOS. 1, 2, 8 and 9FAULT ALLOCATED TO THE THIBODAUX POLICE DEPARTMENT
As discussed at length above, in addition to the legal error by the trial court in failing to instruct the jury to quantify the fault of Mr. Louviere, we find that the jury committed reversible error in assessing fault to the Thibodaux Police Department, the City of Thibodaux, and Chief Estevens. No case in Louisiana history has found a former employer at fault for a former employee's actions. The court committed legal error in finding a duty on the part of the Thibodaux Police Department and submitting *73 the breach of duty issue to the jury.
No fault should have been assessed to Chief Estevens, individually or in his capacity as the Chief of Police of the City of Thibodaux, Mr. Louviere's former employer. The judgment against Chief Estevens, the City of Thibodaux, and the Thibodaux Police Department was based upon the Thibodaux Police Department giving the TPSO a favorable recommendation about Mr. Louviere. However, Mr. Louviere received favorable written evaluations from his supervisors while at the Thibodaux Police Department, resigned of his own violition, and did not go to work for the TPSO until five months later. As discussed at length in the negligent referral portion of this opinion, we find that the facts of this case do not constitute a negligent referral.

ASSIGNMENT OF ERROR NO. 3LEJEUNE DAMAGES
This assignment of error raises the issue of the propriety of the award of LeJeune damages. Louisiana Civil Code article 2315.6 provides that certain persons who "view an event causing injury to another person, or who come upon the scene of the event soon thereafter, may recover damages for mental anguish or emotional distress that they suffer as a result of the other person's injury." The jury awarded these "bystander" damages to Rogers George, Ken Blanchard, George Cavalier, Diane Cavalier, Joseph Eskind, Glynn Duplantis, Phyllis Duplantis, Roddy Duplantis, Kyle Duplantis, and Erin Theriot.
The defendants urge that during the course of the hostage situation, no family member was able to actually see or hear what was going on inside the bank and, further, family members were only reunited with the hostages several hours later, after extensive post-release debriefings with law enforcement personnel and medical examination/treatment at Terrebonne General.
The "bystanders" in this case were gathered together to await the outcome of the hostage crisis in a building only a few blocks away and within sight of the Argent Bank. They witnessed the comings and goings of policemen and other law enforcement personnel and experienced the crisis of the hostage situation, as it unfolded mere yards away. When they became aware that one of the hostages had been killed, the uncertainty as to whether their loved ones would also be killed added to the anguish of the situation. This assignment of error has no merit.

ASSIGNMENT OF ERROR NO. 4QUANTUM
This assignment of error asserts that under any reasonable quantum standard, the jury abused its discretion in awarding damages on certain claims; said awards should be reduced to the highest amount the jury in a reasonable exercise of its discretion could have awarded.
The discretion vested in the trier of fact is great, and even vast, so that an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Under the circumstances, we decline to disturb the award of general damages. After a thorough review of the record, we find that this assignment of error has no merit.

ASSIGNMENT OF ERROR NO. 5PRESCRIPTION
This assignment of error asserts that the trial court erred in failing to find that the Theriot petition, filed over twenty-two months after Louviere's crimes, was *74 not timely, was prescribed on its face, and subject to dismissal. We find prescription was interrupted by the timely filing by the Theriots of a suit for damages in federal court. Therefore, the instant petition was filed timely, and we find that this assignment of error has no merit.

ASSIGNMENTS OF ERROR NOS. 6 AND 19THE GULFPORT DOCUMENTS
These assignments of error assert that the trial court erred in admitting the "Gulfport documents," in giving the spoliation charge concerning them, and in admitting the Gulfport documents absent proper authentication. These assignments of error are rendered moot by our determination of no fault on the part of the Thibodaux defendants.

ASSIGNMENT OF ERROR NO. 10THE SINGLE JUDGMENT
This assignment of error asserts that the trial court erred by entering one judgment in these six cases where not all defendants were named by all plaintiffs. This assignment of error has merit.
This case consists of six separate suits. Adele George Louviere and her father, Rogers George, filed suit and named as defendants Chad Louviere and Jerry Larpenter, individually and as Terrebonne Parish Sheriff, Keith Estevens, the City of Thibodaux Police Department, and the City of Thibodaux.
Brandee Theriot and her husband, Erin Theriot, filed suit against Chad Louviere, the Thibodaux City Police Department, and its excess insurance carrier, Coregis Insurance Company.
Glynn Duplantis, individually and on behalf of his minor son, Kyle Duplantis, Phyllis Duplantis, individually and as tutrix of a minor child, Cammi Marie Bourg, and Roddy Duplantis filed suit for damages stemming from the death of Pamela Duplantis. They named as defendants Chad Louviere, Jerry Larpenter, individually and in his official capacity, Keith Estevens, City of Thibodaux Police Department, City of Thibodaux, Sphere Drake Insurance Company, Louisiana Sheriffs Risk Management Program, and Profit Protection, Inc.
Debra Ann Deroche, Norman Joseph Deroche, Jr., and their two minor children filed suit against Chad Louviere, Keith Estevens, the City of Thibodaux Police Department, the City of Thibodaux, and ABC Insurance Company (the insurer for Thibodaux, the Thibodaux Police Department, and Estevens).
Janene C. Blanchard and her husband, Ken Blanchard, individually and on behalf of their minor child, Ashley Blanchard, and the parents of Janene Blanchard, Diane Cavalier and George Cavalier, Jr., filed suit against Sheriff Jerry Larpenter, individually and in his official capacity, Chad Louviere, the Thibodaux City Police Department, its insurer, Coregis Insurance Company, Louisiana Sheriffs' Risk Management Fund, its excess insurer, Sphere Drake Insurance Company, PLC, Argent Bank, and ABC Insurance Company, the unknown insurer for Argent Bank.
Monica Eskind and her husband, Joseph Eskind, filed suit against Chad Louviere, the Thibodaux City Police Department, and Coregis Insurance Company.
A single judgment, indicating the consolidation of these six cases, was rendered by the trial court.
The consolidation of cases for trial is a procedural convenience and does not merge the actions unless the records clearly reflect an intention to do so. Voth v. American Home Assurance Company, 219 So.2d 236, 240 (La.App. 1 Cir.1969).
*75 The trial court erred in treating the cases as if they were one and the same for all purposes. In this consolidated matter, six separate judgments should have been rendered, each judgment rendered in favor of and/or against only those named parties of each individual suit. This error will be addressed further in our decree.

ASSIGNMENT OF ERROR NO. 11THE STATE CAP
This assignment of error asserts that the trial court erred in failing to apply La. R.S. 13:5106 regarding the damage cap to all state law claims against the Thibodaux defendants. This assignment of error is moot based upon our determination of no fault on the part of the Thibodaux defendants.

ASSIGNMENTS OF ERROR NOS. 12, 13, 14, 15, 16, 17, AND 18 THE § 1983 CLAIMS
These assignments of error concern civil rights damages awarded pursuant to 42 U.S.C.A. § 1983.[5] No court, state or federal, has ever found a civil rights action against a former employer. The Fifth Circuit case cited at oral argument by Louisiana State University Professor John White, and by some of the plaintiffs in brief, Brown v. Bryan County, Okla., 67 F.3d 1174 (5th Cir.1995), [cert. granted, Board of County Commissioners of Bryan County, Okl. v. Brown, 517 U.S. 1154, 116 S.Ct. 1540, 134 L.Ed.2d 645 (1996), judgment vacated, 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997),] does not support the plaintiffs' argument that the City of Thibodaux engaged in outrageous behavior and, further, the decision by the U.S. Fifth Circuit was vacated by the U.S. Supreme Court, Board of County Commissioners of Bryan County, Okla. v. Brown, 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).
In Brown, suit was filed against a reserve deputy sheriff and his employer, the county, pursuant to § 1983 and state law, asserting claims of excessive force, false arrest, and false imprisonment. In that case, the jury found that the sheriff, who was the final policymaker for the sheriff's department, hired the reserve deputy sheriff despite the deputy sheriff's extensive criminal record, without an adequate background check.
The U.S. Supreme Court, in vacating the Fifth Circuit decision, 117 S.Ct. at 1388, stated:
As our § 1983 municipal liability jurisprudence illustrates, however, it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between *76 the municipal action and the deprivation of federal rights.
Further, that court stated:
But unless he would necessarily have reached that decision because Burns' use of excessive force would have been a plainly obvious consequence of the hiring decision, Sheriff Moore's inadequate scrutiny of Burns' record cannot constitute "deliberate indifference" to respondent's federally protected right to be free from a use of excessive force.
. . . . .
Because there was insufficient evidence on which a jury could base a finding that Sheriff Moore's decision to hire Burns reflected conscious disregard of an obvious risk that a use of excessive force would follow, the District Court erred in submitting respondent's inadequate screening claim to the jury.
Board of County Commissioners, 117 S.Ct at 1388, 1393. [Underlining added.]
The above test goes far beyond the foreseeability test employed by Louisiana's duty/risk analysisease of association test, and, further, this case does not support an award of punitive damages against a former employer who wrote a generic reference letter for an employee who had no criminal record.
These assignments of error are rendered moot, based upon our determination of no fault on the part of the Thibodaux defendants and the settlement by Sheriff Larpenter and the TPSO. Thus, the civil rights damage awards in favor of the plaintiffs are vacated.

ASSIGNMENT OF ERROR NO. 20TESTIMONY OF CHAD LOUVIERE
This assignment of error asserts that the trial court erred in admitting the testimony of Mr. Louviere to be read into the record as Mr. Louviere was not unavailable and the Thibodaux defendants were deprived of their right of cross-examination. This assignment is rendered moot by our finding of no fault on the part of the Thibodaux defendants.

LOUVIERE/GEORGE ASSIGNMENT OF ERROR NO. 1
In this assignment of error, the appellants assert that the trial court erred in submitting an interrogatory to the jury to decide whether Adele was negligent and whether her negligence was a cause of damages, and erred in including Adele's name on an interrogatory that asked the jury to assign a percentage of fault to negligent parties. We find no merit to this assignment of error.

LOUVIERE/GEORGE ASSIGNMENT OF ERROR NO. 2
In this assignment of error, the appellants assert that the damages awarded to Adele were inadequate and should be increased. Considering the vast discretion of the trial court, we find no merit to this assignment of error.

LOUVIERE/GEORGE ASSIGNMENT OF ERROR NO. 3
In this assignment of error, the appellants assert that their attorneys' fees should be increased consistent with any increase in the damages awarded and for the services in connection with the appeal of this matter. We find no merit to this assignment of error.

DECREE
Based on our determination of the foregoing assignments of error, we find that the trial court erred in finding fault on the part of the City of Thibodaux, the Thibodaux Police Department, and Keith Estevens, and we reverse the judgment against *77 them; we render judgment in favor of the City of Thibodaux, the Thibodaux Police Department, and Keith Estevens, dismissing all of the claims against them with prejudice; further, after de novo review, we reallocate fault as follows: 15% to the Terrebonne Parish Sheriff's Office and 85% to Mr. Louviere. Because the Terrebonne Parish Sheriff's Office and Sheriff Larpenter settled with the plaintiffs prior to trial, they are not parties to this suit and judgment cannot be rendered against them. Further, we vacate the finding of a civil rights violation under 42 U.S.C.A. § 1983.
Additionally, the judgments awarded against the Thibodaux defendants for sanctions for bad faith in failing to produce material documents to which plaintiffs were entitled were not assigned as error.
Because there are six separate appeals involved, we shall list the conclusions in each case separately.

2201 CA 0089

Adele George Louviere and Rogers George

v.

Chad Louviere, Jerry Larpenter, Individually, and as Terrebonne Parish Sheriff
Therefore, for the foregoing reasons, we render judgment in favor of Adele George Louviere and Rogers George in accord with the amounts awarded by the trial court (with the exception of the civil rights damages awards, which are vacated) and render that judgment 85% against Chad Louviere as follows:
Adele George Louviere, past, present, and future physical pain and suffering, $42,500.00; past, present, and future mental pain and suffering, embarrassment and humiliation, $212,500.00; past medical expenses, $2,533.00; future medical expenses, $1,020.00; loss of enjoyment of life, $850.00.
Rogers George, past emotional distress, $21,250.00.

2001 CA 0090

Debra Ann Deroche, Norman Joseph Deroche, Jr., and their two minor children

v.

Keith Estevens, Chief of Police of Thibodaux Police Department, City of Thibodaux Police Department, City of Thibodaux, and ABC Insurance Company
We render judgment in favor of the Deroche plaintiffs in the amounts awarded by the trial court (with the exception of the civil rights damages awards, which are vacated) and render that judgment 85% against Chad Louviere as follows:
Debra Deroche, past, present, and future physical pain and suffering, $255,000.00; past, present, and future mental pain and suffering, embarrassment and humiliation, $637,500.00; loss of past wages, $21,250.00; past medical expenses, $13,285.50; future medical expenses, $8,500.00; loss of enjoyment of life, $212,500.00.
Norman Deroche, Jr., loss of consortium, $170,000.00.
Norman Deroche, III, loss of consortium, $8,500.00.
Nicholas Deroche, loss of consortium, $8,500.00.

*78 2001 CA 0091
Glynn Duplantis, Individually and on behalf of his minor son, Kyle Duplantis; Phyllis Duplantis, Individually and as tutrix of the minor child, Cammi Marie Bourg; and Roddy Duplantis

v.
Chad Louviere, Jerry Larpenter, Keith H. Estevens, The City of Thibodaux Police Department, The City of Thibodaux, Sphere Drake Insurance Company, Louisiana Sheriffs Risk Management Program, And Profit Protection, Inc.
We render judgment in favor of the Duplantis plaintiffs in the amounts awarded by the trial court (with the exception of the civil rights damages awards, which are vacated) and render that judgment assessed at 85% against Chad Louviere as follows:
Cammi Marie Bourg, wrongful death of her mother, $425,000.00; survival damages suffered by her mother, Pamela Duplantis, $212,500.00; loss of services and support, $110,500.00; past medical expenses, $1,037.00; future medical expenses, $4,250.00.
Glynn Duplantis, past emotional distress, $85,000.00; future emotional distress, $42,500.00; past medical expenses, $7,616.00; future medical expenses, $8,500.00; funeral expenses of Pamela Duplantis, $5,177.35.
Phyllis Duplantis, past emotional distress, $85,000.00; future emotional distress, $42,500.00; past medical expenses, $246.50; future medical expenses, $21,250.00.
Roddy Duplantis, past emotional distress, $12,750.00; future emotional distress, $8,500.00.
Kyle Duplantis, past emotional distress, $4,250.00; future emotional distress, $4,250.00.

2001 CA 0092

Erin and Brandee Theriot

v.

Thibodaux City Police Department, and Chad Louviere
We render judgment in favor of the Theriot plaintiffs in the amounts awarded by the trial court (with the exception of the civil rights damages awards, which are vacated) and render that judgment 85% against Chad Louviere as follows:
Brandee Theriot, past, present, and future physical pain and suffering, $63,750.00; past, present, and future mental pain and suffering, embarrassment and humiliation, $425,000.00; past wages, $4,225.35; past medical expenses, $2,103.75; loss of enjoyment of life, $8,500.00.
Erin Theriot, past emotional distress, $42,500.00; future emotional distress, $4,250.00; loss of consortium, $4,250.00.

2001 CA 0093

Joseph and Monica Eskind

v.

Thibodaux City Police Department, and Chad Louviere
We render judgment in favor of Joseph and Monica Eskind in the amounts awarded by the trial court (with the exception of the civil rights damages awards which are vacated) and render that judgment 85% against Chad Louviere as follows:
Monica Eskind, past, present, and future physical pain and suffering, $8,500.00; past, present, and future mental pain and suffering, embarrassment and humiliation, $42,500.00; past wages, $3,312.45; past medical expenses, $1,619.25; future medical *79 expenses, $1,700.00; loss of enjoyment of life, $4,250.00.
Joseph Eskind, past emotional distress, $8,500.00; future emotional distress, $850.00; loss of consortium, $2,125.00.

2001 CA 0094
Janene C. Blanchard, Wife of/and Ken Blanchard; their minor child, Ashley Blanchard; George Cavalier, Jr. and Diane Cavalier

v.
Chad Louviere, Jerry Larpenter, Individually and As Terrebonne Parish Sheriff, Thibodaux City Police Department, and Argent Bank
We render judgment in favor of the Blanchard plaintiffs in the amounts awarded by the trial court (with the exception of the civil rights damages awards, which are vacated) and render that judgment 85% against Chad Louviere as follows:
Janene Blanchard, past, present, and future physical pain and suffering, $212,500.00; past, present, and future mental pain and suffering, embarrassment and humiliation, $680,000.00; loss of past and future wages, $27,026.60; past medical expenses, $3,251.25; future medical expenses, $3,400.00; loss of enjoyment of life, $255,000.00.
Ken Blanchard, past emotional distress, $63,750.00; future emotional distress, $21,250.00; loss of consortium, $63,750.00.
Ashley Blanchard, loss of consortium, $4,250.00.
George Cavalier, past emotional distress, $21,250.00; future emotional distress, $8,500.00; past medical expenses, $458.15; future medical expenses, $1,700.00; loss of consortium, $4,250.00.
Diana Cavalier, past emotional distress, $21,250.00; future emotional distress, $21,250.00; loss of consortium $4,250.00.
VACATED IN PART, REVERSED IN PART AND RENDERED.
GUIDRY, J., dissents in part and assigns reasons.
FOGG, J., concurs in the result.
GUIDRY, J., dissenting in part.
I disagree with the result reached by the majority with respect to the Thibodeaux defendants. Based on the totality of the information in the possession of the Thibodeaux defendants, they clearly breached their assumed duty by favorably recommending Mr. Louviere to the Terrebonne Parish Sheriff's Office. Further, you can easily associate the duty not to recommend Mr. Louviere, with his history of mental illness, being sexually abused, and his abusive treatment toward women, even while serving as a law enforcement officer, with the horrific acts he committed in this matter. The acts committed herein were violent and sexually abusive. Louviere's actions were foreseeable and totally consistent with the information known to the Thibodeaux defendants at the time of their negligent referral. Therefore, I respectfully dissent from that portion of the majority opinion finding no fault on the part of the Thibodeaux defendants.
NOTES
[1] The Honorable Philip C. Ciaccio, Judge (retired), Fourth Circuit Court of Appeal, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] The criminal case against Mr. Louviere has proceeded through the justice system and he has been duly punished under our criminal law. For purposes of this case, we need not go into detailed facts of the sexual crimes perpetrated against some of the victims by Mr. Louviere. To do so is unnecessary and would only add to the anguish of his victims, who testified that they have suffered due to the publicity and notoriety of this case.
[3] All of the plaintiffs did not sue all of the defendants. That issue will be addressed later in the opinion.
[4] We note that the Thibodaux defendants and Coregis Insurance Company raise the same assignments of error, but in a different order.

We use the order found in the Thibodaux defendants' brief.
[5] 42 U.S.C.A. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.